[Civ. No. 25415.   Second Dist., Div. Two.   Mar. 7, 1962.]

TURNER D. WHEELING, as Sheriff-Administrator, etc., Plaintiff and Respondent, v. FINANCIAL INDEMNITY COMPANY, Defendant and Appellant.

Bolton, Groff & Dunne and Henry E. Kappler for Defendant and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and Daren T. Johnson for Plaintiff and Respondent.

FOX, P. J.—This is an action against an insurance company on a policy of insurance to recover the amount of a default judgment rendered by a Virginia court against the insured.

Appellant insurance company issued a policy of automobile liability insurance to Arthur DeCosta in July of 1955, with reference to a 1954 Chevrolet. The policy was issued and delivered in California, and DeCosta was at the time a resident of this state. Appellant, by the terms of the policy, promised ''To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person,

caused by accident and arising out of the ownership, maintenance, or use of the automobile.'' The policy defines the word ''Insured'' to include ''the named Insured and also . . . any person while using the automobile . . . with his permission.'' A Military Exclusion Endorsement was included, providing that no coverage would be afforded when the vehicle was being driven by a member of the armed forces other than the insured (unless the insured was in the automobile).

The company further agrees to ''Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . .''

Insurance Code section 11580, pursuant to which this action is brought, provides that a policy such as the one here involved shall not be issued without certain provisions and if one is issued without them, it shall be construed as if such provisions were embodied therein. Among the provisions thus deemed included is: ''. . . whenever judgment is secured against the insured . . . in an action *based upon bodily injury, death, or property damage,* then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.'' (Emphasis added.)

After the policy was issued, DeCosta, a member of the Air Force, left California and was stationed in Virginia. In October of 1955, his automobile was involved in an accident in Virginia in which one R. P. Hester was killed. Respondent, as ''Sheriff-Administrator'' of the estate of Hester commenced an action in a Virginia court to recover damages for his death.[1] DeCosta and one William Spraglin were named as defendants. The complaint, in that action, called ''Motion for Judgment'' in Virginia, alleged that Hester had died and

---

[1]Section 8-633 of the Code of Virginia then provided: ''Whenever the death of a person shall be caused by the wrongful act, neglect or default of any person or corporation, or of any ship or vessel, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, or to proceed in rem against such ship or vessel or in personam against the owners thereof, or having control of her, and to recover damages in respect thereof, then, in every such case, the person who or corporation or ship or vessel which would have been liable, if death had not ensued, shall be liable to an action for damages, or if a ship or vessel, to a libel in rem, and her owners or those responsible for her acts or defaults or negligence to a libel in personam, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances, as amount in law to a felony. . . .''

Section 8-634 provided: ''Every such action shall be brought by and in the name of the personal representative of such deceased person.''

that respondent had been appointed administrator; that Hester's death "was caused and was the direct and sole result of the grossly negligent and careless and reckless and wanton manner of operation of a motor vehicle being driven by the defendant, William D. Spraglin, on U.S. Route 1 in Stafford County, Virginia, at about 3:25 A.M. on the morning of October 2, 1955"; that the automobile driven by Spraglin was owned by DeCosta, and Spraglin "was operating the said vehicle as agent" of DeCosta and with his full knowledge and consent. Personal service was made on the named defendants, and they did not appear. On October 2, 1956, a default was entered, evidence was reviewed, and a judgment was entered. DeCosta notified appellant of the action, and appellant refused to defend. Subsequently, respondent filed an action in Virginia to recover on the policy. Service was successfully quashed, and respondent thereafter filed the present action.

The pretrial conference order reads in part as follows: "It is stipulated that a true copy of the insurance policy may be admitted in evidence without any objection, and that the photocopy of proceedings in the Circuit Court of Prince William County, State of Virginia, is admitted in evidence and attached hereto as plaintiff's Exhibit 1 at the trial, and that said document is a valid judgment of a court of competent jurisdiction, but defendant does not waive special defenses set forth in the answer questioning the effect of the judgment as it may apply to the defendant in this action."[2] It was further stipulated that no witnesses were to be called, and the only issues to be raised were those arising out of the policy of insurance and the documents pertaining to the Virginia judgment.

The trial court found it to be "true, as stipulated, that during the effective period of the policy . . ., plaintiff's deceased . . . was killed as a result of the negligent operation of the vehicle described in the policy, on the public highways of Virginia, *outside of any military reservation,* by one William D. Spraglin, *a member of the military,* with the permission of Arthur DeCosta, named insured, *and that the named insured was not in said automobile at that time.*" (Emphasis added.) The Virginia judgment was found to be valid, and conditions precedent set forth by the policy were found to

---

[2]These special defenses are: that the judgment alleged in the complaint has not been sued upon in California; that it was obtained against different parties; that it involved "different subject matter," different issues of fact, and different issues of law.

have been met. The court concluded that the Military Exclusion Endorsement was invalid, and granted respondent recovery on the policy as a proper third party beneficiary.

The principal question decided below, which decision appellant contends was incorrect, concerns the effect of the Military Exclusion Endorsement. ■ First, since the contract of insurance was made and delivered in California, and did not specify a place of performance, we must look to California law in assessing the validity of its provisions. (Civ. Code, § 1646; *Blair* v. *New York Life Ins. Co.*, 40 Cal.App.2d 494 [104 P.2d 1075]; *Baekgaard* v. *Carreiro,* 237 F.2d 459.) At all times pertinent to this section, section 415 of the Vehicle Code (now §§ 16450-16455) required that all motor vehicle liability policies ''insure the person named therein and *any other person* using . . . said . . . vehicle . . . with the . . . permission of said assured.'' (Emphasis added.) It further required that the policy ''insure every said person on account of the maintenance, use or operation of every motor vehicle therein covered *within the continental limits of the United States* against loss from the liability imposed by law arising from such maintenance, use or operation'' to $5,000. (Emphasis added.)

In *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359], it was held that a provision in a policy was invalid insofar as it attempted to limit coverage to the named insureds and their immediate family. At page 39 it was stated: ''It appears that section 415 must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles.'' The same question was raised in *Bonfils* v. *Pacific Auto Ins. Co.,* 165 Cal.App.2d 152 [331 P.2d 766]. There, as here, the complainant had recovered a default judgment which was unsatisfied, and later sued the insurance company. The company contended that someone other than the named insured was driving at the time of the accident and the policy excluded coverage for anyone but the named insured. Following the lead of the *Wildman* case, the opinion states at page 158: ''Every motor vehicle liability policy of insurance issued in this state, by virtue of law, covers both the owner . . . and every person using the [automobile] with the owner's consent; any omission of an express provision in such a policy resulting in a failure to effect this dual coverage is supplied by implication of law; by the same

standard, any provision therein which expressly excludes such coverage, being contrary to public policy, is rendered ineffectual by law." It could not be more clear that the Military Exclusion Endorsement is invalid. The *Wildman* case was reaffirmed in *Exchange Casualty & Surety Co.* v. *Scott*, 56 Cal.2d 613, 622-623 [15 Cal.Rptr. 897, 364 P.2d 833].

*McFarland* v. *New Zealand Ins. Co.*, 176 Cal.App.2d 422 [1 Cal.Rptr. 482], cited by appellant, is not in point. It was there held that section 415 and the *Wildman* and *Bonfils* cases did not go so far as to prevent the issuing of a policy which applied only to accidents occurring within the boundaries of a military reservation. There is a standard order at most military bases that personnel cannot operate automobiles on the base without insurance. The policy involved in the *McFarland* case was typical of those highly limited policies put out to meet the need thus arising. It contained a restrictive endorsement which limited coverage as mentioned above, and also stated: *"The insurance shall not be construed to comply with the motor vehicle financial responsibility law of any state or province."* (Emphasis ours.) Such a limitation was held to be valid in the absence of an express statutory prohibition. Far from expressing such a limitation, DeCosta's policy states: "Such insurance as is afforded by this policy for bodily injury liability or property damage *shall comply with the provisions of the motor vehicle financial responsibility law* of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law. . . ." (Emphasis added.)

Appellant's contention is that the laws of Virginia should apply since the contract was to be "performed" in Virginia. It bases this contention on the proposition that under the agreement to defend any suit against the insured, no duty would arise until such time as it had the obligation to defend an action, which of course, would be after the accident. Therefore, according to appellant, performance would be at the place where the accident occurred or the matter was litigated. Under this theory, that place would be Virginia; so appellant argues Virginia laws should apply.

Appellant's position is not sound because this is a California contract. In *Standard Acc. Ins. Co. of Detroit Mich.* v. *Winget*, 197 F.2d 97, the court said if a "policy was executed in California, it must be interpreted in accordance

with California law.'' The contract was entered into between the insurer and the insured in California, was executed in California, and the insured was then a resident of California. This means that the contract came into existence in California and at that time, the California financial responsibility laws were incorporated by operation of law into the contract. (*Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union*, 45 Cal.2d 764 [291 P.2d 433].) The contract, therefore, became complete and effective at the time of the execution and is not dependent upon subsequent acts or events to determine its provisions.

Appellant next contends that the Virginia judgment is invalid, in spite of the stipulation to the contrary. Various claims are made, the principal one being that the complaint in that action was defective. It will be recalled (from footnote 1, *supra*) that Virginia permits the personal representative of one who is killed by the wrongful act of another to bring an action to recover damages for his death. The complaint referred to above alleges a concise statement of facts which, if proved, would entitle the complainant to a judgment. Title 8, 1950 Code of Virginia, rule 3-18(d) reads: ''Every pleading shall state the facts on which the party relies . . . and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense. An allegation of negligence . . . is sufficient without specifying the particulars of the negligence.'' The pleading summarized above clearly meets these specifications. Since gross negligence and an agency relationship were alleged, it becomes irrelevant whether Virginia has an ownership liability statute as does California (Veh. Code, § 17150 et seq.) or whether respondent's decedent was riding as a guest or not.

Appellant also contends that the respondent is not a proper party to bring this action. In this connection, he relies on section 1913 of the Code of Civil Procedure, which is to the effect that a foreign administrator has no authority beyond the jurisdiction of his appointment. In a connected argument, appellant points out that respondent is the ''owner'' of the Virginia judgment only in a representative sense, and is therefore not a ''judgment creditor'' entitled by Insurance Code section 11580 to sue on the policy.

By its judgment, the Virginia court ordered ''that the Plaintiff, Turner D. Wheeling, Sheriff-Administrator of the Estate of R. P. Hester, deceased, recover of and have judgment against the Defendants . . .'' It was then further ordered

that monies received on the judgment be paid over to the mother of the deceased after deducting court costs and counsel fees. By this order, respondent is the only one entitled to recover directly on the judgment, and is therefore the only one entitled to enforce it. The question remaining is whether he must obtain local ancillary letters first. The authority of a foreign representative to bring an action in this state was extensively reviewed by this court in the recent case of *Mayer* v. *Willing,* 196 Cal.App.2d 379 [16 Cal.Rptr. 476]. ▉ It was there pointed out that while a foreign representative may not sue locally on a *claim,* if he first reduced that claim to a *judgment* in the jurisdiction of his appointment he may bring an action on that judgment elsewhere without obtaining ancillary letters. (See *Lewis* v. *Adams,* 70 Cal. 403, 408 [11 P. 833, 59 Am.Rep. 423].) Although this is not an action on a judgment in the conventional sense, the reason for the exception is equally applicable here. (See *Lewis* v. *Adams, supra.*) ▉ Furthermore, it has been held that where no objection was made at the trial level to the capacity of a foreign representative, none may be raised on appeal. (*McLean* v. *American Security & Trust Co.* (D.C.) 119 F.Supp. 405.)

▉ Appellant also claims that the Virginia judgment is void because of the effect of the Soldiers' and Sailors' Civil Relief Act of 1940. It contends that, under that act, the court has a duty not only to appoint counsel to defend an enlisted man but also to insure that there is adequate representation by the counsel so appointed. Appellant says that the counsel appointed did "absolutely nothing."

The order directing judgment for respondent recites that Leonard L. Lonas, Jr., was appointed "by order of this court" on June 3, 1957, to represent the defendants, pursuant to the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940. This appointment was made as a part of the court's official duty. ▉ The presumption is that this duty was properly performed and, as a consequence the court appointed a competent and reliable attorney to represent defendants. As court-appointed counsel for defendants, Mr. Lonas was acting in an official capacity and performing an official duty. ▉ The presumption is that such duty was properly performed, in the course of which counsel made reasonable investigation of the facts surrounding the accident and the applicable law and from these made his determination as to the course he should follow in representing defendants. ▉ These presumptions are evidence and support an infer-

ence that appointed counsel competently represented defendants. Furthermore, it appears from the order directing judgment for plaintiff that counsel for defendants was in court when this matter was heard. His name and address as "Attorney for defendants" are on the order.

Counsel for appellant bases his argument on the recital in the order that no pleadings had been filed nor any appearance made on behalf of defendants. This, however, does not justify appellant's position. Counsel may well have reasonably concluded, after investigating the facts and circumstances surrounding the accident and examining the applicable law, that no useful purpose would be served by taking any formal action in court. He was, however, present at the hearing to protect defendants' interests.

Finally, in this connection, it should be pointed out that appellant did not even suggest this point in the trial court.

Appellant then seeks to discredit the Virginia judgment because it is a default judgment.      The mere fact that a judgment is by default does not detract from its validity or effectiveness. In *O'Brien* v. *Appling*, 133 Cal.App.2d 40 [283 P.2d 289], the court pointed out (p. 42) that a "judgment by default is just as conclusive upon the issues tendered by the complaint as if rendered after answer filed and trial on allegations denied by the answer."

On oral argument, appellant suggested that if we held the Military Exclusion Endorsement invalid, its liability then should be limited to $5,000 since section 415 only required the policy to provide that amount of coverage. However, appellant did not even mention this point in its opening brief of 111 pages.[3]      It has long been the rule in this state that "Appellate courts will notice only those assignments pointed out in the brief of an appellant, all others are deemed to have been waived or abandoned." (*Title Guar. & Trust Co.* v. *Fraternal Finance Co.*, 220 Cal. 362, 363 [30 P.2d 515].) In *People* ex rel. *Dept. of Public Works* v. *McCullough*, 100 Cal.App.2d 101 [223 P.2d 37], the court said (p. 106): "A court of appeal may properly consider the point as waived when it is not presented in the opening brief." (See to the same effect: *Utz* v. *Aureguy*, 109 Cal.App.2d 803, 807 [241 P.2d 639]; *Schultz* v. *Steinberg*, 182 Cal.App.2d 134, 137 [5 Cal.Rptr. 890].) In *Richard* v. *Richard*, 123 Cal.App.2d 900 [267 P.2d 867], the court pointed out (p. 903) that: "[t]he obvious reason for this rule is that opposing counsel

---

[3]Appellant did not file any closing brief.

is not afforded an opportunity of answering the contentions of the appellant or of assisting the appellate court by furnishing it with the benefit of research. . . ."

In view of these authorities, appellant must be deemed to have waived or abandoned this point.

None of appellant's additional arguments are sufficiently meritorious to require discussion.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 2, 1962.