[Civ. No. 10158. Fourth Dist., Div. One. Dec. 17, 1970.]

MARA SILVIA LOPEZ RAMIREZ et al., Plaintiffs and Respondents, v. WILSHIRE INSURANCE COMPANY, Defendant and Appellant.

624

### Counsel

Gerald R. Schmelzer for Defendant and Appellant.

Gostin & Katz, Irwin Gostin and James M. Gattey for Plaintiffs and Respondents.

### Opinion

**WHELAN, J.**—Plaintiffs obtained a declaratory judgment as to the proper measure of damages under an uninsured motorist clause of an insurance policy issued by defendant Wilshire Insurance Company. Defendant appeals.

Wilshire Insurance Company (Wilshire), a California corporation, issued its automobile liability insurance policy to Elena Perez (Elena) and her husband for a period including August 28, 1967. The covered vehicle was one registered in California and usually garaged there. Elena was a native born citizen of the United States, a resident of National City in San Diego County, and employed by a laundry in San Diego County.

Mara Silvia Lopez Ramirez (Mara), Tomasa Mendoza Miranda (Tomasa) and Rosa Rodriguez Uribe (Rosa) are the plaintiffs. On August 28, 1967, all were, and for several years had been, employed in San Diego County as laundry workers.

At about 6:15 a.m. on August 28, 1967, the three plaintiffs were guests in the Perez car which Elena was driving easterly along Second Street in Tijuana, Baja California, Mexico, toward the international border. All four women were on their way to work in San Diego County.

Second Street was a through street guarded against cross traffic by stop signs. In its intersection with Reforma Avenue the Perez car was struck by a taxicab driven by Guadalupe Reynoso Delgado, or Salgado (Delgado), who had failed to stop for the stop sign against north-south traffic, who was without a Mexican driver's license and who was inebriated.

The taxicab was registered in Mexico and owned by Julia de Gamboa. The only insurance on the taxicab or held by either Delgado or the owner was a policy issued by a Mexican company which provided, as permitted by Mexican law, that there was no coverage against a loss arising out of a happening when the driver was inebriated.

All parties to the accident suffered injuries.

Wilshire's policy contained an endorsement for coverage in Mexico, subject to certain limitations not applicable here.

Wilshire's policy, executed in California, contained, as required by California law, a provision by which it agreed "[t]o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

Plaintiff's complaint, filed April 12, 1968, sought declaratory relief whether the arbitrators to be appointed should apply the measure of damages limited by Mexican law or the measure of damages such as a California court would apply in a case where California law furnished the rule of decision.

The trial court decided that Civil Code section 3333, California's rule of decision, should apply as to the measure of damages.

The significant findings are these: "8. Plaintiff, TOMASA MENDOZA MIRANDA was, at the time of the accident, a resident of California and had been a resident of California for 10 years, and was and had been employed in California for a period of seven years. 9. Plaintiff, ROSA RODRIGUEZ URIBE at the time of said accident maintained a residence in the State of California and was and had been employed in California for at least six years. 10. Plaintiff, MARA SILVIA LOPEZ RAMIREZ at the time of said accident, maintained a residence in the State of California and had maintained such residence for a period of ten years and was employed in California where she had been employed for two years prior to the accident."

The court drew conclusions of law as follows: "3. The most substantial and significant contacts of plaintiffs and defendant are with the State of California. 4. Application of the law of Mexico in the determination of the measure of damages to be applied in determining the amount of damages to which plaintiffs are entitled to recover would defeat the interests of plaintiffs and defendant and of the State of California and would advance no interest of the Republic of Mexico. 5. Application of the law of California to determine the measure of damages to be applied in determining the

amount of damages to which plaintiffs are entitled will advance the interests of the litigants and will defeat no interest of the Republic of Mexico."

It appears the trial court viewed the case as one to be decided by reference to rules arising from conflicts of laws as such rules have been developed in the more recent decisions and texts dealing with the subject.

The most recent formulation of the rule as to tort cases is set forth in a tentative draft of the Restatement Second, Conflict of Laws, section 379, as follows: "(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort. (2) Important contacts that the forum will consider in determining the state of most significant relationship include: (a) the place where the injury occurred, (b) the place where the conduct occurred, (c) the domicile, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. (3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

The former rule was as follows: The measure of damages for a tort is determined by the law of the place of wrong. (Rest., Conflict of Laws, § 412, p. 493; accord: *Roloff* v. *Hundeby,* 105 Cal.App. 645 [288 P. 702]; *Williams* v. *Myers,* 110 Cal.App. 265 [294 P. 61]; *Ponsonby* v. *Sacramento Suburban Fruit Lands Co.,* 210 Cal. 229 [291 P. 167].)

The Supreme Court in *Reich* v. *Purcell,* 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727], cited *Kilberg* v. *Northeast Airlines, Inc.,* 9 N.Y.2d 34 [211 N.Y.S.2d 133, 172 N.E.2d 526, 527-528, 529], as among the cases that had abandoned the earlier rule, deriving from the theory that the allowance of damages is a part of the substantive law, that the law of the place of wrong must always be applied in the matter of damages. The New York court refused to apply a limitation of damages under the law of Massachusetts where the wrongful death was caused, upon the ground such limitation was against New York's public policy "prohibiting the imposition of limits on such damages [which] is strong, clear and old." The decedent was a New York resident who had bought a ticket and emplaned in New York for Boston. The court observed: "Modern conditions make it unjust and anomalous to subject the traveling citizen of this State to the varying laws of other States through and over which they move. The number of States limiting death case damages has become smaller over the years but there are still 14 of them (compare the list in Tiffany, Death by Wrongful Act [1st ed., 1893], p. xvii, with the data found in Martindale-Hubbell Law Digests, 1960 ed., Vol. IV). An air traveler from New York may in a flight of a few hours' duration pass through several of those commonwealths. His plane may

meet with disaster in a State he never intended to cross but into which the plane has flown because of bad weather or other unexpected developments, or an airplane's catastrophic descent may begin in one State and end in another. The place of injury becomes entirely fortuitous. Our courts should if possible provide protection for our own State's people against unfair and anachronistic treatment of the lawsuits which result from these disasters. . . .

". . . . . . . . . . . . . . . . . . . .

". . . It is open to us, therefore, particularly in view of our own strong public policy as to death action damages, to treat the measure of damages in this case as being a procedural or remedial question controlled by our own State policies."

In *Davenport* v. *Webb,* 11 N.Y.2d 392 [230 N.Y.S.2d 17, 183 N.E.2d 902], the New York Court of Appeals held that an allowance of interest from date of death in a wrongful death case, as specifically provided by New York statute, was improper in an action arising from a death caused by an automobile accident in Maryland, since Maryland law did not permit such recovery. *Kilberg* v. *Northeast Airlines, Inc., supra,* 172 N.E.2d 526, is distinguished. The court reasoned thus: "Consistent with the authorities is the very practical consideration that if we hold the award of prejudgment interest to be procedural rather than substantive, a New York resident who is compelled to resort to the courts of another State to enforce an action for wrongful death occurring in this State will not be entitled to prejudgment interest, since other States either have no statutory authorization for pre-judgment interest (and there are a number of those) or else characterize it as substantive and therefore not applicable to foreign causes of action." (*Davenport* v. *Webb, supra,* 183 N.E.2d 902, 904.)

In *Pearson* v. *Northeast Airlines, Inc.,* 309 F.2d 553, 559, 561, the Court of Appeals for the Second Circuit applied New York law as declared in *Kilberg* v. *Northeast Airlines, Inc., supra,* in an action for the death of another New York resident in the same accident as in *Kilberg* v. *Northeast Airlines, Inc., supra.* The court made these observations: "Our decision cannot, therefore, be interpreted to condone a forum's applying its own rules in a wanton manner by labeling matters 'procedural' while arbitrarily choosing the parts of a foreign statute it wishes to enforce by labeling them 'substantive.' We do hold, however, that a state with substantial ties to a transaction in dispute has a legitimate constitutional interest in the application of its own rules of law. If, indeed, those connections are wholly lacking or at best tenuous, then it may be proper to conclude that the state has exceeded its constitutional power in applying its local law. . . .

". . . . . . . . . . . . . . . . . . . .

"We may concede that the Wrongful Death Statute of Massachusetts, almost certainly designed with an eye toward the regulation of occurrences transpiring wholly within Massachusetts, should be honored fully and completely when the incident under litigation is a local one."

In *Tramontana* v. *S. A. Empresa De Viacao Aerea Rio Grandense,* 350 F.2d 468, 471 [121 App.D.C. 338], cert. denied 383 U.S. 943 [16 L.Ed.2d 206, 86 S.Ct. 1195], the Court of Appeals of the District of Columbia Circuit considered the applicability of Brazilian law in a wrongful death action. The decedent, and his wife who brought the action, had been residents of Maryland. He was killed in a collision in Brazil of two airplanes, one of which, owned and operated by defendant, a government-controlled Brazilian corporation, was engaged in a wholly domestic flight.

The court applied a limitation of the amount of damages fixed by Brazilian law. As a preface to its reasons for doing so, it said: "[W]e are free to explore the question presented by this appeal in the light of the newer concepts of conflict of laws. Our conclusion that the District Court properly applied the Brazilian limitation rests upon an examination of the respective relationships of Brazil and the District of Columbia with the accident, and with the parties here involved; and a consideration of their respective interests in the resolution of this issue."

In *Armiger* v. *Real S. A. Transportes Aereos,* 377 F.2d 943 [126 App. D.C. 304], the Court of Appeals of the District of Columbia applied the same measure of damages in actions for wrongful death of other persons killed in the same collision of airplanes, some of whom had been residents of states other than Maryland. The plaintiffs whose decedents had not been Maryland residents sought to distinguish the earlier decision upon the ground that the courts of Maryland would have been bound by precedent to apply the law of the place of wrong, but that the courts of their states of residence were not so bound.

Wilshire's contention is that the case of *Victor* v. *Sperry,* 163 Cal.App.2d 518 [329 P.2d 728], decided by this court in 1958, is controlling.

*Victor* v. *Sperry* was an action brought by a California resident against other California residents for damages caused in a collision in Baja California, 44 kilometers south of Tijuana, between two cars in which the parties were riding, both of which were registered in California.

The court held that the laws of Mexico limiting the amount of damages recoverable for such injuries applied rather than the California rule of unlimited damages. The Supreme Court denied a hearing.

Wilshire argues that the later decision of *Reich* v. *Purcell, supra,* 67 Cal. 2d 551, has not affected the binding force of *Victor* v. *Sperry.*

*Reich* v. *Purcell* grew out of a collision between two cars in Missouri. The plaintiffs' claims were based upon the injury and death of Ohio residents en route to California with a possibility of taking up permanent residence there. The defendant Purcell was a California domiciliary en route to a vacation in Illinois.

Missouri law in *Reich* v. *Purcell, supra,* 67 Cal.2d 551, 555-556, would have limited plaintiffs' recovery to $25,000, which defendant contended was the applicable measure of damages.

In holding that Ohio law rather than Missouri law furnished the proper rule of decision, the court said: "Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i.e., to determine the law that most appropriately applies to the issue involved [citation]. Moreover, as jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved [citations], that law no longer affords even a semblance of the general application that was once thought to be its great virtue. We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state. . . .

"As the forum we must consider all of the foreign and domestic elements and interests involved in this case to determine the rule applicable. Three states are involved. Ohio is where plaintiffs and their decedents resided before the accident and where the decedents' estates are being administered. Missouri is the place of the wrong. California is the place where defendant resides and is the forum. Although plaintiffs now reside in California, their residence and domicile at the time of the accident are the relevant residence and domicile. At the time of the accident the plans to change the family domicile were not definite and fixed, and if the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged. [Citation.] Accordingly, plaintiffs' present domicile in California does not give this state any interest in applying its law, and since California has no limitation of damages, it also has no interest in applying its law on behalf of defendant. As a forum that is therefore disinterested in the only issue in dispute, we must decide whether to adopt the Ohio or the Missouri rule as the rule of decision for this case.

"Missouri is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved. Limitations of damages for wrongful death, however, have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside

there. . . . Missouri's limitation on damages expresses an additional concern for defendants, however, in that it operates to avoid the imposition of excessive financial burdens on them. That concern is also primarily local and we fail to perceive any substantial interest Missouri might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation. Defendant's liability should not be limited when no party to the action is from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind. A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiffs receive no more than they would had they been injured at home. [Citation.] Under these circumstances giving effect to Ohio's interests in affording full recovery to injured parties does not conflict with any substantial interest of Missouri. [Citation.] Accordingly, the Missouri limitation does not apply."

Wilshire points out that in neither *Victor* v. *Sperry, supra,* 163 Cal.App. 2d 518, nor *Reich* v. *Purcell, supra,* 67 Cal.2d 551, was there any question of uninsured motorist coverage. It also distinguishes the present case from *Reich* v. *Purcell* because here the uninsured tortfeasor was a Mexican national and domiciliary.

It draws attention to the contract and statutory right of the insurer to be subrogated to the insured's right of action against the uninsured tortfeasor, the fact that Mexico has an interest in protecting its national from greater liability than that permitted by Mexican law, and the consequent inability of Wilshire to recoup beyond the Mexican limits.

Plaintiffs emphasize that the present action is one involving contract liability under a contract executed in California. They say also that the contract is to be performed in California; it is, however, a contract that might be enforced elsewhere. (See *Haury* v. *Allstate Insurance Company,* 384 F.2d 32.)

There is no suggestion that plaintiffs were forum shopping. The Superior Court of California was the proper court in which to seek interpretation of a provision of a contract written in California by a California corporation in which the provision was incorporated by virtue of California law requiring such a provision in a liability insurance policy issued or delivered in this state to the owner of a motor vehicle.

In the circumstances of this case, it might not have been possible to obtain jurisdiction of Wilshire in the forum of the place of the wrong (Mexico).

Wilshire accuses plaintiffs of relying upon Mexican law to establish

Delgado as an uninsured motorist and of repudiating it for the purpose of seeking a more favorable rule of damages than Mexican law affords.

However, the policy and California law determine what is an uninsured motorist. Mexican law merely permits to come into play the circumstance that brings Delgado within the definition. In *Taylor* v. *Preferred Risk Mut. Ins. Co.,* 225 Cal.App.2d 80 [37 Cal.Rptr. 63], it was held that the driver of a Texas car in California who had insurance issued by a Texas company unlicensed to do business in California was uninsured within the meaning of defendant's policy because the Texas insurance had a limit of $5,000 for injury to one person rather than $10,000 as required by California law at the time.

Nothing in the record discloses what was the relevant Mexican law on damages in 1967 or thereafter. *Victor* v. *Sperry, supra,* 163 Cal.App.2d 518, states that Mexican law at that time permitted recovery for loss of wages of no more than $1.50 per day for a period of not more than one year for temporary total disability; and for permanent total disability no more than $2 per day for 918 days; for pain and suffering an addition of one-third of all other damages was permitted.

If we assume an eight-hour day for each of the plaintiffs here, each would have a daily loss of earning of not less than $13.44 under current regulations of which we take judicial notice.

The rules of interpretation and construction of the contract were those of California law. (*Wheeling* v. *Financial Indem. Co.,* 201 Cal.App.2d 36, 41-42 [19 Cal.Rptr. 879].)

That is not to say that an action to enforce the contract could be maintained only in a California court.

The contract provision which was imposed by California law must be interpreted as the statute imposing it is interpreted.

█ We interpret the language "insuring the insured . . . for all sums . . . which he . . . shall be legally entitled to recover as damages for bodily injury . . . from the owner or operator of an uninsured motor vehicle" to mean such damages as a California court would award. That is not to say that in every case a California court would award damages measured by California law. (See *Reich* v. *Purcell, supra,* 67 Cal.2d 551.)

Plaintiffs point out that they could not without Wilshire's written consent prosecute an action to judgment against Delgado so as to determine precisely what sums they would be legally entitled to recover.

We doubt, moreover, that Delgado would be subjected to the jurisdiction

of a California court for that purpose, or to the jurisdiction of any court other than one in Mexico merely because it is unlikely service of process could be effected upon him in California.

Wilshire argues that the provisions of the statute and of the policy giving the insurer a right of subrogation to the insured's cause of action should be determinative as to the measure of damages that should be applied in fixing the amount that the insured might be legally entitled to recover.

We agree that in a Mexican court, in an action against Delgado brought originally by plaintiffs or under Wilshire's right of subrogation, recovery could be had only in the measure permitted by Mexican law. It is difficult to see how Wilshire's right of subrogation could be asserted against Delgado in other than a Mexican court, for the reason stated above.

There is no doubt that the insurer's right to subrogation is an integral part of the legislation. "[T]he subrogation provision in this statute does not directly aid the victim of the accident, but it is an important part of the statute and no doubt has played a role in making it acceptable and workable." (*Mills* v. *Farmers Ins. Exchange,* 231 Cal.App.2d 124, 128 [41 Cal.Rptr. 650].)

Whether the amount the insured is legally entitled to recover is to be measured by the amount that the insurer might be entitled to recover under its right of subrogation, the relationship of those amounts must be considered as bearing upon the question of the applicable rule of damages in a conflict of laws situation where the law of the place of the wrong places a limit upon the amount recoverable by the injured person from the one causing the injury.

Plaintiffs point out, correctly, that in the nature of things an uninsured motorist is one against whom the insurer's right of subrogation may be of slight worth. But a distinction must be drawn between a judgment nonenforceable because the debtor is indigent and the denial of the right to recover a judgment above the amount of a limitation imposed not by the sovereign under whose law a right of subrogation arose but by the sovereign whose law places a ceiling on the extent of the right.

Undoubtedly an anomaly may exist if the amount to be paid under a contract of indemnity is that which the indemnitee is legally entitled to recover as fixed by a court of a state other than that where the damages were caused, if the latter state imposes a limit which is not found in the law of the forum state, and if the forum state, as a corollary to the indemnitee's right to recover on the contract according to its law, subrogates the indemnitor to the indemnitee's right to recover against a third party which can

be enforced only in the forum of the state where the wrong occurred and subject to the limitations imposed by it as to the amount of recovery.

The findings of the trial court that each of the three plaintiffs was a California resident and had been employed in California for several years before the accident must be said to be supported by substantial evidence.

That implies of course that each of them paid federal social security and California employment insurance tax, and perhaps that they paid income taxes.

In addition to those California contacts, they were at the time of the accident in a vehicle with California registration, covered by the policy in question, and en route to California and their employment at the time of the accident.

Delgado's only contacts so far as appears were with Mexico; the car driven by him had Mexican registration; was covered by Mexican insurance, consistently with the Mexican limits of liability, we assume; and the accident occurred in Mexico, where the particular trip originated on which the plaintiffs had embarked.

We do not doubt that had Delgado been the injured party and the driver of the car in which plaintiffs rode the party at fault, Delgado's recovery in a California court would have been subject to Mexico's limitations as to the amount of damages.

We have expressed our opinion that such limits would have been applied also in a Mexican court had plaintiffs sought recovery there against Delgado.

Yet comity would be better served if California extended to a Mexican resident and national equal treatment in its courts with its own residents and citizens.

In no other way could there be a hope that a California citizen seeking to assert in a Mexican court a right that arose in California would be able to obtain recognition of the measure of that right according to California law.

We doubt, however, that a decision should be based upon conflict of laws concepts.

In *Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275], the court said: "There is no express provision in section 11580.2 as to the territorial area within which the insured must be protected against damage caused by an uninsured vehicle. The section, however, was designed to minimize losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists, and it

would appear that the public policy of this state, as expressed in said section, requires that the insured be protected against damages for bodily injury caused by an uninsured motorist in the same territory in which the policy covers him for liability."

■ The policy of the California law providing for uninsured motorist coverage is that persons covered by such insurance who are regularly employed in California, who in general travel frequently to and from California in a vehicle covered by such insurance and to and from a city in Mexico separated from the California county in which they are regularly employed only by the international border, who suffer injuries that give rise to operation of the insurance, shall have the same measure of protection under such insurance whether the injuries occur in the California county of employment or in the city in Mexico from which it is separated only by the international border.

On that basis only we hold the California measure of damages to be proper.

The judgment is affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1971. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.

the bankruptcy proceeding in the instant case was still pending, Code Civ. Proc., § 542b, was, and continued to be, suspended. Accordingly, it was held, the sheriff was under no obligation to return the money to defendant, and he acted properly and pursuant to Code Civ. Proc., § 544, in delivering the funds to the debtor and to the referee. (Opinion by Coakley, J., with Stone, P. J., and Gargano, J., concurring.)