[Civ. No. 10486. Fourth Dist., Div. Two. June 2, 1971.]

WILLIAM A. KIRKLEY, Plaintiff and Respondent, v.
STATE FARM MUTUAL INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Portigal & Knight and Allan Portigal for Defendant and Appellant.

Cooksey, Schumacher, Coleman, Minyard & Howard and Paul Cooksey for Plaintiff and Respondent.

**OPINION**

**KAUFMAN, J.**—Defendant appeals from an adverse judgment in an action for declaratory relief.

### The Facts

On February 14, 1969, plaintiff and three other people were seriously injured in an automobile accident in Charlotte, North Carolina. Plaintiff and the other injured persons were occupants of a vehicle owned and operated by plaintiff's brother, a resident of North Carolina. This vehicle was struck by another vehicle driven, allegedly negligently, by W. A. Kranick. Kranick carried liability insurance coverage with limits of $10,000 for injury to one person and $20,000 for injury to more than one person. These liability limits complied with the financial responsibility requirements of the State of North Carolina. The respective claims of the four injured persons each exceeds $10,000, and, for practical purposes, there is only $5,000 available for payment of plaintiff's claim from Kranick's liability insurance carrier.

Prior to February 14, 1969, in Orange County, California, defendant issued and delivered to plaintiff an automobile liability insurance policy, which included uninsured motorist coverage as required by section 11580.2 of the California Insurance Code with limits of $15,000 for injury to one person and $30,000 for injury to more than one person, subject to the limit for one person. This policy was in full force and effect on the date of the accident.

Plaintiff filed this action for a declaration of his rights under the policy. The parties having stipulated to the foregoing facts, judgment was entered decreeing that, under California Insurance Code section 11580.2 and the policy provisions, Kranick was an uninsured motorist; that defendant was therefore required to arbitrate plaintiff's claim for personal injuries sustained by him in the North Carolina accident; and that the amount to which plaintiff is entitled under his uninsured motorist coverage is "not limited or offset in any manner by the liability insurance . . . of . . . W. A. Kranick."

### Contentions and Issues

Insurance Code section 11580.2, subdivision (b), defines "uninsured motor vehicle" to mean "a motor vehicle with respect to the ownership, maintenance or use of which there is *no bodily injury liability insurance* or bond applicable at the time of the accident. . . ." Two recent

Court of Appeal decisions, however, have held that uninsured motorist coverage is applicable also where the offending vehicle is underinsured, that is, covered by liability insurance in amounts less than the minimum $15,000 and $30,000 limits required by the California Financial Responsibility Law. (*Taylor* v. *Preferred Risk Mut. Ins. Co.,* 225 Cal.App.2d 80, 82 [37 Cal.Rptr. 63]; *Calhoun* v. *State Farm Mutual Auto. Ins. Co.,* 254 Cal.App.2d 407, 409-410 [62 Cal.Rptr. 177].) Defendant concedes that under the *Taylor* and *Calhoun* cases, Kranick's vehicle was an "uninsured motor vehicle" within the meaning of Insurance Code section 11580.2 and its policy issued to plaintiff.[1] ■ Defendant contends, however, that its maximum liability should be $5,000 (less any medical payments made by defendant on behalf of plaintiff (Ins. Code, § 11580.2, subd. (e))), that is, the difference between the single-party liability limit carried by Kranick of $10,000 and the single-party liability limit of $15,000 provided for by the uninsured motorist coverage. In support of this contention defendant argues that the purpose of uninsured motorist coverage is to provide an injured California insured with total insurance of $15,000 for one injured person and $30,000 for more than one injured person. It urges that, if it is required to pay all plaintiff's damages up to $15,000, plaintiff will have had the advantage of $25,000 coverage, $15,000 from plaintiff's uninsured motorist coverage and $10,000 from Kranick's liability coverage.

## *Discussion*

Defendant's contention cannot be sustained. Its arguments fail to take account of the automatic subrogation provided for by the statute. "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made." (Ins. Code, § 11580.2, subd. (g).) Defendant urges that it should pay to plaintiff the sum of $5,000 (assuming that his proof justifies at least that amount) and permit plaintiff to pursue whatever remedies he may have against Kranick. The statute, however, provides otherwise. Upon payment to plaintiff of $5,000, defendant is automatically subrogated to plaintiff's rights against Kranick in that amount. Although defendant has offered to waive its subrogation rights, its conten-

---

[1]Indeed, the policy defines "Uninsured Automobile" to mean "a land motor vehicle with respect to the ownership, maintenance or use of which there is *in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged,* no bodily injury liability bond or insurance policy applicable at the time of the accident. . . ." (Italics supplied.)

tion as to how matters such as this ought to be handled is, nevertheless, in conflict with the automatic subrogation provision of the statute.

For the same reason, its argument that, otherwise, plaintiff will have the benefit of $25,000 in coverage is also unsound. Assuming that plaintiff proves damages in the arbitration proceeding of at least $15,000 and is awarded that amount under his uninsured motorist coverage, defendant will be automatically subrogated to plaintiff's rights against Kranick and, ultimately, Kranick's insurance coverage. Thus, plaintiff will have had the benefit of only $15,000 insurance coverage.

Although the courts in *Taylor* and *Calhoun* were not confronted with the precise issue here raised, the result we reach is strongly suggested by *Taylor* in which the court noted: "No 'double coverage' problem is involved, since the act (subd. (e)) gives defendant subrogation rights against the Texan, and thus affords it recourse to such coverage as he has." (*Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d at p. 83.) The statutory scheme contemplates that once the uninsured motorist coverage comes into play, the injured insured has resort to the full coverage for which he has paid. To the extent of any payment made by it under the uninsured motorist coverage, the carrier is subrogated to the injured insured's rights against the uninsured or underinsured motorist and is thus afforded recourse to such coverage as he has. (Ins. Code, § 11580.2; see *Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d 80.) The difficulty, if any, comes from classifying Kranick as "uninsured" within the meaning of Insurance Code section 11580.2. That classification, however, is concededly compelled by the *Taylor* and *Calhoun* cases decided in 1964 and 1967, respectively.[2] The Legislature not having amended section 11580.2 to countermand the *Taylor* and *Calhoun* decisions, it must be presumed that those decisions are in accord with the legislative intent.

Judgment affirmed.

Gardner, P. J., and Gabbert, J., concurred.

---

[2]It is also compelled by the language of the policy. (See fn. 1, *ante.*)