[Civ. No. 44988. First Dist., Div. One. Mar. 24, 1980.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Plaintiff and Respondent, v.
LAURA J. CROCKETT et al., Defendants and Appellants.

COUNSEL

Stephen J. Redner for Defendants and Appellants.

Sellar, Engleking, Hartman & Hazard and William R. Hartman for Plaintiff and Respondent.

OPINION

NEWSOM, J.—The present appeal is from a declaratory judgment of the Superior Court of Contra Costa County finding and declaring no uninsured motorist coverage existed in favor of appellants as against respondent State Farm Mutual Automobile Insurance Company.

The undisputed facts show that Laura and John Crockett (appellants or the Crocketts) are residents of Contra Costa County, State of California, who, while visiting Hawaii in December of 1976, leased from Budget-Rent-A-Car a 1975 Volkswagen automobile.

On December 18, on the Island of Kauai, the Crockett vehicle collided with a Datsun owned by Dr. Robert Hamblin and driven with permission by his son, Peter.

Both vehicles were fully insured under Hawaiian law, carrying the minimum required $25,000 bodily liability coverage. Hawaii had enacted at that time a scheme of "no fault" insurance under which reparation for injuries and losses such as those which occurred here was

made without regard to liability. The right to sue for damages for any person whose medical expenses did not exceed $1,500 was abolished. The Crocketts—additional insureds under their lessors' policy—fell into this category, and were thus precluded from filing a tort action and confined to receiving $2,462.14 in total compensation for their injuries.

Upon returning to California the Crocketts claimed uninsured motorist benefits under their own automobile policy, issued by respondent, State Farm Insurance.

Appellants' argument, concisely stated in their own words, is that, under California law the Hawaiian vehicle was underinsured, and "underinsurance is uninsurance." The alleged unfairness of the trial court's ruling is characterized as follows: "The court applied Hawaiian law to defeat the rights of California motorists with California uninsured motorist coverage with a California carrier. It is saying that if a motorist is 'insured' *within* the definition of said motorist's state of residence, that suffices to satisfy the definition of 'insured' under California law." (Italics added.)

■ At the outset, we note that the parties debate the question of *which* law—Hawaiian or California—ought to be the law of the case. The answer is, we think, both. Appellants' contract with State Farm was executed in California by California residents, and must be interpreted in accordance with the law of this state, while, necessarily, reference must be made to the Hawaiian statute to give meaning to the controversy. (Cf. *Ramirez* v. *Wilshire Ins. Co.* (1970) 13 Cal.App.3d 622 [91 Cal.Rptr. 895]; *Wheeling* v. *Financial Indem. Co.* (1962) 201 Cal.App.2d 36, 42 [19 Cal.Rptr. 879].) ■ In interpreting the California statute, we are guided by the principle that, "'A liberal construction must be given to statutes providing compensation for those injured on the highway through no fault of their own...and the Uninsured Motorist Law is a statute of this class...to be interpreted liberally.'" (*Robles* v. *California State Auto. Assn.* (1978) 79 Cal. App.3d 602, 608-609 [145 Cal.Rptr. 115].)

As authority supporting the argument that "underinsurance" is "uninsurance," our attention is directed by appellants to the case of *Taylor* v. *Preferred Risk Mut. Ins. Co.* (1964) 225 Cal.App.2d 80 [37 Cal.Rptr. 63], in which the injured occupant of a California vehicle was permitted to sue under an insured motorist clause because the Texas vehicle causing the accident had inadequate liability insurance. Section

11580.2 of the Insurance Code required of foreign vehicles—then (1961) as now—limits equal to those required of California vehicles under our Financial Responsibility Law. Since the Texas vehicle carried bodily injury liability insurance with maximum limits of $5,000 for injury to one person, the court permitted the suit, noting that its interpretation, "...more nearly approaches the declared legislative intent. Legislative attention was directed to a gap in the financial responsibility law, which, although it provides minimum coverage requirements, in fact comes into operation only after the first accident caused by an irresponsible motorist." (*Taylor* v. *Preferred Risk Mut. Ins. Co., supra*, 225 Cal.App.2d at p. 82.)*

Appellant also cites *Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal.App.3d 1078 [95 Cal.Rptr. 427], where, again, an out-of-state motorist carried liability insurance below the minimum requirement of California law for uninsured motorist coverage. There, the court held the following: that the out-of-state motorist was uninsured within section 11580.2; and, that the amount to which the insured was entitled under his uninsured motorist coverage was not limited by the amount carried by the out-of-state motorist, i.e., he could recover up to $15,000 under his uninsured motorist coverage, and was not limited to the *difference* between the single party liability limit of $10,000 carried by the out-of-state motorist and the $15,000 under his own uninsured provision. (*Kirkley* v. *State Farm Mut. Ins. Co., supra*, at p. 1082.)

But, as respondent argues, the principles expressed in *Taylor* v. *Preferred Risk Mut. Ins. Co., supra*, 225 Cal.App.2d 80 and *Kirkley* v. *State Farm Mut. Ins. Co., supra*, 17 Cal.App.3d 1078 have not been extended "to hold that an insured's uninsured motorist coverage is applicable in every situation in which he has not been *fully* compensated by a third party." And the case before us does not present the question of underinsurance at all, since the Hawaiian policy provides liability limits in excess of California requirements, but rather the issue of full compensation by California standards.

An analogous California case involving the issue of "full compensation" is *Traveler's Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992 [114

---

*We note that, in the case at bar, since no action could be maintained against Hamblin in Hawaii, State Farm has available to it no such subrogation right as was considered a partial justification for the allowance of uninsured motorists coverage in both *Taylor, supra*, and *Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal.App.3d 1078 [95 Cal.Rptr. 427].

Cal.Rptr. 651], in which the tortfeasor's insurance limit, while far in excess of the legal minimum, had been exhausted in satisfaction of multiple claims, so that one of the victims of the accident was unable to satisfy the balance of his claim under his uninsured motorist provision. As the court there noted in denying appellant's right to relief, a contrary conclusion "...would effectually convert uninsured motorist coverage into a policy of excess accident insurance, and not excess insurance with any fixed limits, but insurance 'open ended' at least to the limits of the uninsured motorist coverage. That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of the legislative intent." (39 Cal.App.3d at p. 995.)

Respondent has also cited a closely analogous recent decision of the Nebraska Supreme Court in *Crossley* v. *Pacific Employers Ins. Co.* (1977) 198 Neb. 26 [251 N.W.2d 383]. There, an insured resident of Nebraska, with uninsured motorist coverage on his vehicle, was injured in Colorado while riding as a passenger in his own car, which was then being driven with permission by his stepson. Colorado, like Hawaii, is a "no fault" jurisdiction, and the injured party's medical and related expenses fell far below the minimum required to file a tort claim in Colorado for general damages. Liability coverage on the Colorado vehicle, however, as in the case at bar, was not less than that required by Nebraska law for vehicles under its registration. The court consequently concluded that the Colorado automobile was *not* an uninsured motor vehicle, noting that: "Had the accident occurred in the State of Nebraska, the Colorado car would clearly have been an insured rather than an uninsured motor vehicle. It was not the Colorado automobile insurance policy which restricted or limited the legal liability of the Colorado driver, or her insurance carrier. Instead, it was the law of Colorado which had that effect." (*Crossley* v. *Pacific Employers Ins. Co., supra*, 198 Neb. at p. 29 [251 N.W.2d at p. 385].)

▮ The rationale of *Crossley, supra*, is compelling. In the case at bar Hamblin did have public liability insurance at the time of the accident, and such insurance in fact exceeded the minimum California requirement by $10,000. Had the injuries suffered by appellants met, in monetary terms, the threshold requirement of Hawaiian law, a suit for general damages could have been maintained under circumstances con-

sonant with California's current notion of minimum financial responsibility and fairness.

We therefore conclude that appellants cannot recover under their uninsured motorist coverage both because the Hamblin vehicle was insured, and because Hamblin had no legal liability toward appellants—the no-fault system having abolished tort liability where, as here, the medical expenses of an injured party do not exceed $1,500. (Cf. Ins. Code, § 11580.2, subd. (a)(2)): "Uninsured motorists coverage insures . . . for all sums within the financial responsibility limits which such persons are *legally entitled to recover.* . . ." (Italics added.)

A claimant must establish the legal liability of the uninsured motorist before he can recover. It is beyond dispute that Hamblin bore no such liability to the Crocketts in the case at bar.

Affirmed.

Racanelli, P. J., and Grodin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 28, 1980.