[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD
This is a claim for underinsured motorist benefits under an insurance policy issued by the defendant to the plaintiff. The claim arises out of an automobile accident which occurred in New York State on June 5, 1987. The plaintiff, a Connecticut resident, was operating his own car when it was struck by a vehicle registered in New York and operated by Rolly Bain, who had a California driver's license. The record suggests that Bain was at fault for the accident, which was a head-on collision. Bain's insurance carrier paid the entire $10,000 policy to the plaintiff. Under New York law, the minimum amount of liability coverage required by statute is $10,000. After exhausting the coverage on the Bain vehicle, the plaintiff has made a claim under the uninsured/underinsured motorist coverage provision in his own insurance policy issued by the defendant, which provides coverage in the amount of $25,000 per person and $50,000 per accident. The State Farm policy provides for arbitration of disputes. For purposes of arbitration, the defendant conceded that the negligence of Bain was the sole proximate cause of the accident and that Bain was underinsured in the amount of $15,000.
The arbitration panel unanimously ruled in favor of the defendant by decision dated February 19, 1992, concluding that while Connecticut law covered construction of the insurance policy between the parties, the plaintiff's right to collect damages under the policy was controlled by the tort law of New York. When New York law was applied, the arbitrators concluded that the plaintiff was not legally entitled to collect damages from Bain, the uninsured motorist, because the plaintiff did not meet the provision under New York law that there must be a serious injury [known as the "verbal threshold"], since the injuries received did not fall within the definition of serious injury as defined by the New York courts under New York law. After reviewing the record and briefs in this case, this court concurs with the arbitrators.
The insurance contract in dispute in this case was CT Page 11219 issued to a Connecticut resident for an automobile garaged in Connecticut. "The general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect at place of performance in a jurisdiction other that the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction." Breen v. Aetna Casualty Surety Co., 153 Conn. 633, 637; Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 253; Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 338. The intent of the parties was to have the rights under the contract determined by applying Connecticut law regardless of where a motor vehicle accident involving the plaintiff's car may occur. This does not mean, however, that when the insurance contract between the parties is interpreted by applying Connecticut law, that the tort law of another state will not apply if the accident occurred in the other state. The insurance policy requires the defendant to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motorist vehicle." (Emphasis added.) The underinsured motorist benefit provision of the policy provides in part as follows:
 Two questions must be decided by agreement between the insured and us:
 1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and
2. If so, in what amount?
 If there is no agreement, these questions shall be decided by arbitration. . . .
It is undisputed that the right of the insured to recover damages from the tortfeasor depends upon whether or not he was negligent, and the amount of damages that can be legally recovered from a negligent defendant-driver is not a question of contract law, but rather of tort law.
Connecticut has traditionally followed the well established rule that the substantive rights and obligations arising out of a tort controversy are determined by the law CT Page 11220 of the place of injury, or lex loci delicti. O'Connor v. O'Connor, 201 Conn. 632, 637; Gibson v. Fullin, 172 Conn. 407,411. However, in O'Connor v. O'Connor, supra, and Simaitis v. Flood, 182 Conn. 24, our Supreme Court held that the law of the place of the injury will not be applied when that rule frustrates the legitimate expectations of the party and undermines an important policy of the state. The O'Connor case involved a one-vehicle accident involving two Connecticut residents which occurred in Quebec. The court recognized that "Quebec, although it was the place of injury, has no significant interest in applying its statutory compensation scheme to the controversy because the location of the automobile accident in Quebec was purely fortuitous. Connecticut, by contrast, has a substantial interest in applying its law to the case because: (1) both parties are domiciled and employed in Connecticut; (2) both parties are subject to the requirements and entitled to the benefits of Connecticut's no-fault insurance law, and that law embodies a policy providing access to the courts for persons with serious bodily injuries; and (3) aside from her initial treatment after the accident, the plaintiff has received all of her post-accident medical care in Connecticut." O'Connor v. O'Connor, supra, 636, 637.
The Simaitis case arose out of an automobile accident that occurred in Tennessee, involving two Connecticut residents employed by a Connecticut corporation who were traveling together in the course of their employment. The workers' compensation law of Tennessee barred an action for damages by one employee against another, while under Connecticut law [Section 31-293a of the General Statutes], an exception exists from workers' compensation coverage for motor vehicle accidents involving employees while in the scope of their employment. After considering the respective interests of Tennessee and Connecticut in applying their law to the controversy, the court, following section 181 of the Restatement (Second), Conflict of Laws, determined that the law of Connecticut rather than the law of Tennessee should govern the plaintiff's right to recover.
Both O'Connor and Simaitis, however, involved a situation where the injured plaintiff and the negligent driver were both residents of Connecticut with no significant contact or connection with the place of the injury except that the accident happened to occur there. There was no CT Page 11221 justification for either Quebec or Tennessee to apply its according to their relative importance with respect to the particular issue. Id., 652. Factors (a), (b) and (d) would require application of New York law, while consideration (c) would not point to any particular jurisdiction since the plaintiff resided in Connecticut and the other driver resided elsewhere. Accordingly, even if the contacts theory is applied here, the tort law of New York must be applied to determine the rights of the plaintiff.
This case presents a conflict of law question over which state law applies to determine benefits under an uninsured/underinsured insurance contract, an issue which has not been decided in Connecticut. The Supreme Court of Rhode Island decided a similar issue in Berardi v. Employers Mutual Insurance Co., 527 A.2d 515 (R.I. 1987), which involved a choice of law question where a resident of that state was injured in New York by a New York driver. The insurance policy had a "legally entitled to recover its damages" clause similar to the one in the defendant's policy. The Rhode Island court applied the contacts or interest weighing approach and determined that New York tort law would govern the rights of the plaintiff. When New York law was applied, the plaintiff did not recover because he did not sustain "serious injuries" as defined by New York's no-fault law. A similar result was reached in State Farm Mutual Automobile Ins. Co. v. Crockett, 103 Cal.App.3d 652,163 Cal.Rptr. 206, 208 (1980), where California residents brought suit in that state for injuries received in an automobile accident in Hawaii. The court concluded that since the insurance contract was made in California by California residents that it had to be interpreted under California law, but that since the accident occurred in Hawaii, Hawaiian tort law would be applied to determine the plaintiffs' rights under the policy. Since Hawaii had a no-fault statute, and the plaintiffs' medical expenses did not meet the monetary threshold ($1,500), they were not legally entitled to recover damages against the tortfeasor under Hawaii law and, accordingly, had no action for uninsured motorist benefits.
The plaintiff concedes that the policy language, "legally entitled to collect damages from the owner or driver of the uninsured motor vehicle" is consistent with the requirements of Connecticut statutes and regulations. As a result, the defendant has not placed provisions in its CT Page 11222 Connecticut insurance policies which violate Connecticut law or the public policy of this state. In fact, the provision used appears to be a standard language for insurance policies in other states as well. See 73 A.L.R.3d 632, 649-656, Action for Uninsured Motorist Benefits. Cases from other states that analyze this phrase in insurance policies hold that it means the insured must prove that the other motorist was uninsured, that the other motorist was legally liable for the damage to the insured and the amount of the liability. This includes substantive defenses that would have been available to the uninsured motorist, Winner v. Retzlaff,211 Kan. 59, 505 P.2d 606, 610 (1973); State Farm Mutual Automobile Insurance Co. v. Griffin, 51 Ala. App. 426,286 So.2d 302 (1973); State Farm Mutual Automobile Insurance Co. v. Girtman, 113 Ga. App. 54, 147 S.E.2d 364 (1966); Rhault v. Tsagarakos, 361 F. Sup. 202 (DC Vt. 1973), but the phrase "legally entitled to collect damages" or "legally entitled to recover" does not include procedural defenses such as the statute of limitations, Booth v. Fireman's Fund 218 So.2d 580
(La. 1968). The New York no-fault statute is part of the substantive tort law of New York. Under New York law, the phrase in the policy "legally entitled to recover" requires the insured to prove (1) fault and (2) damages. Deluca v. Motor Vehicle Accident Indemnification Corp., 17 N.Y.2d 76,215 N.E.2d 482 (1966). This would include the requirement of a serious injury as defined under New York law.
If the plaintiff had brought suit against Bain in the New York courts, both the liability of Bain and the liability of the defendant as the plaintiff's insurer would clearly be governed by New York's no-fault law. What the plaintiff claims here is an enhanced right to recover against the defendant merely because he is a Connecticut resident suing in the Connecticut courts. Even though the defendant entered into a contract in Connecticut, by the terms of that contract it did not agree to be responsible for more damages than the plaintiff could have recovered from the negligent driver in New York where the accident occurred. Connecticut like New York has a no-fault insurance law, and while the provisions of them are not identical, it is not a violation of the public policy of this state merely because the potential benefits payable to a Connecticut resident are not identical under the New York and Connecticut statutes.
Even though a Connecticut insured "legally entitled to CT Page 11223 collect damages" from an underinsured driver does not have to commence a legal action against him in order to proceed directly against the insurer for underinsured motorist benefits, 78 A.L.R.3d 632, 649, the claimant must still prove that he would be entitled to collect those damages in a direct action against the negligent driver before he can recover them under his own insurance policy. Accordingly, the plaintiff cannot recover unless he meets the no-fault threshold under New York law.
Section 5102 of the New York Insurance Law contains the "verbal threshold" by the defining "serious injury" as follows:
 A personal injury which results in death; dismemberment; significant disfigurement; a fracture; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.
Whether or not a plaintiff has suffered a "serious injury" under this statute is a question for the court under New York law. Licari v. Elliot, 57 N.Y.2d 230 455 N.Y.S.2d 570,441 N.E.2d 1088 (1982). Several other New York cases referred to in the defendant's reply brief discuss what injuries are sufficiently significant to meet the statutory definition. See Popp v. Kramer, 508 N.Y.S.2d 470 (2d Dept. 1986); Partlow v. Meehan, 548 N.Y.S.2d 239 (2d Dept. 1989); McKnight v. Lavalle, 537 N.Y.S.2d 421 (4th Dept. 1989); Lowe v. Bennett 511 N.Y.S.2d 603 (1st Dept. 1986). Under Licari, the court determines whether there is sufficient evidence amounting to a prima facie showing of serious injury meeting the statutory definition, which is a prerequisite to submitting the case to a jury.
The evidence submitted to the arbitrators in this case CT Page 11224 is part of the record in this proceeding, and has been reviewed by the court. The arbitrators concluded that the plaintiff's injuries did not meet the verbal threshold for "serious injury" under the New York statute. A detailed discussion of the evidence and a comparison of this case with the other New York decisions finding no serious injury would serve no useful purpose. The plaintiff sustained a soft tissue cervical spine injury in the accident. X-rays were negative, and two orthopedic surgeons disagreed on whether the plaintiff had any permanent partial disability. While it is difficult to compare apples and oranges, basically the plaintiff's injuries are less severe than those described in the New York cases construing the serious injury statute. Even though this court engages in a de novo review of the record, it agrees with the conclusion of the arbitrators that the plaintiff did not meet the verbal threshold under New York law.
The application to vacate the arbitration decision is denied.
Robert A. Fuller, Judge