[No. S023261. Dec. 3, 1992.]

ALICE CASAREZ RANGEL, Plaintiff and Appellant, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF
SOUTHERN CALIFORNIA, Defendant and Respondent.

2

**COUNSEL**

Shernoff, Scott & Bidart, Robert K. Scott and Marian H. Tully for Plaintiff and Appellant.

Golbert, Kelly, Crowley & Jennett, James B. Crowley, Clifford H. Woosley and Michael I. D. Mercy for Defendant and Respondent.

Low, Ball & Lynch and Raymond Coates as Amici Curiae on behalf of Defendant and Respondent.

OPINION

PANELLI, J.—We granted review to decide whether an uninsured motorist carrier committed a tortious breach of insurance contract by delaying payment on a claim when the insured's workers' compensation claim arising from the same accident had not yet been resolved. We conclude that there was no breach of duty and reverse the judgment of the Court of Appeal.

## I. FACTS AND PROCEDURAL HISTORY

In December 1977, defendant Interinsurance Exchange of the Automobile Club of Southern California (the Exchange) issued an automobile insurance policy to plaintiff Alice Casarez Rangel (Rangel). In February 1978, Rangel was injured by an uninsured motorist in a hit-and-run accident. Rangel filed a claim for uninsured motorist coverage benefits under her policy shortly after the accident and also filed a demand for arbitration of the claim. Additionally, Rangel filed a workers' compensation claim asserting that she had been injured in the course and scope of her employment.

The uninsured motorist provision of Rangel's insurance policy provided for reduction of the loss payable by the amount of workers' compensation benefits received by the insured: "[A]ny *loss payable* to or for any person *shall be reduced* by the amount paid and the present value of all amounts payable to such person under any worker's [*sic*] compensation or workmen's compensation law, exclusive of non-occupational disability benefits." (Italics added.) Furthermore, the arbitration clause of the policy provided for arbitration in certain circumstances: "If the insured . . . and the Exchange are in disagreement as to whether any one of them are legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, *or do not agree as to the amount of such damages which may be owing under this Part, then upon the demand of either, those said matters in disagreement shall be settled by arbitration . . . .*" (Italics added.)

The Exchange initially refused to pay Rangel the uninsured motorist benefits, maintaining that under the terms of the coverage, it did not owe Rangel those benefits until her workers' compensation claim had been resolved. On January 25, 1979, Rangel filed a demand for arbitration of her uninsured-motorist claim. However, the American Arbitration Association ordered that the arbitration be held in abeyance while Rangel's workers' compensation proceeding was pending.

In September 1984, more than six years after the uninsured motorist claim was filed, the Exchange paid Rangel $15,000,[1] the maximum amount of the uninsured motorist coverage, contingent upon her execution of a release in full settlement of her uninsured motorist claim. Additionally, with Rangel's consent, the Exchange filed a lien in Rangel's workers' compensation action.[2] The workers' compensation claim was not resolved until May 1986, when Rangel was awarded benefits for both temporary and permanent disability.[3]

In September 1985, Rangel filed a complaint for tortious breach of the insurance contract, pleading two causes of action. First, Rangel pled that the Exchange had breached its duty of good faith and fair dealing. Second, Rangel claimed that the Exchange had breached its statutory duties by knowingly committing or performing specified unfair claims settlement practices prohibited by Insurance Code section 790.03, subdivision (h).[4] In its answer, the Exchange denied the material allegations of Rangel's complaint and asserted eight affirmative defenses; among those being that the

---

[1] Of this award, $5,000 was subject to a lien by Rangel's former attorney.

[2] The lien was for uninsured motorist benefits paid and not for payment of medical expenses. Rangel never asserted that any portion of the $15,000 would be used to pay medical expenses.

[3] The Exchange has asked us to take judicial notice of the opinion and supplemental findings and award issued by the Workers' Compensation Appeals Board on May 7, 1986. We grant this request. (Evid. Code, § 452, subd. (c).) The workers' compensation award provided at least $64,000 in benefits. The award makes no mention of the Exchange's lien; the Exchange maintains that it was not paid.

[4] All further statutory references are to the Insurance Code unless otherwise noted.

Section 790.03 provides in pertinent part:

"The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

"(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

"(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

Although the parties have not addressed this issue, we note that in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], we held that section 790.03, subdivision (h) does not provide a private cause of action against insurance companies. However, we limited the application of our holding to cases that had not yet been filed at the time that case became final. (46 Cal.3d at p. 305.) Because Rangel filed her suit in 1985, it is not barred by *Moradi-Shalal*. (*Ibid.*; see also *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 838-841 [262 Cal.Rptr. 106].)

amount due on Rangel's claim for uninsured motorist coverage was uncertain and could not be determined while Rangel was pursuing her workers' compensation claim.

The Exchange unsuccessfully moved for summary judgment before Judge Deering of the law and motion department. Judge Shatford, a retired judge, was later appointed to determine all pretrial matters and to preside over the trial. The Exchange moved for judgment on the pleadings based on the defense that no duty to pay uninsured motorist benefits arose during the pendency of the workers' compensation proceedings. Judge Shatford granted the motion and Rangel appealed.

The Court of Appeal held that Judge Shatford had jurisdiction to rule on the motion for judgment on the pleadings after Judge Deering denied the motion for summary judgment.[5] The Court of Appeal then determined that an insurer may have a duty to settle an uninsured motorist claim before the pending workers' compensation claim is resolved when a lien on the workers' compensation claim is available. The court determined that a lien was available to the insurer in this case. Therefore, the court reversed the trial court's judgment and held that the complaint stated a cause of action for breach of the insurer's duty of good faith and fair dealing and for violation of the insurer's statutory duties under section 790.03, subdivision (h).

## II. Is an Uninsured Motorist Insurer Obliged to Pay Benefits Before a Related Workers' Compensation Claim Is Resolved?

■ The standard of review in a motion for judgment on the pleadings is well settled. The motion is confined to the face of the pleading under attack, and all facts alleged in the complaint must be accepted as true. (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 815 [195 Cal.Rptr. 421].) ■ With these principles in mind, we consider whether the facts alleged in Rangel's complaint were sufficient to state a cause of action.

The insurance contract between Rangel and the Exchange was issued pursuant to section 11580.2. This section requires automobile insurers to offer uninsured motorist coverage with all automobile liability insurance policies (§ 11580.2, subd. (a)(1)), and authorizes the insurer to reduce the

[5]Rangel did not file an answer to the petition for review, and so did not challenge this portion of the Court of Appeal's judgment. Therefore, the question of whether the Court of Appeal erred in its holding on this procedural matter is not before us. (Cal. Rules of Court, rule 28(e)(2).) As a result, although Rangel argued in her brief that Judge Shatford was bound by the order denying the motion for summary judgment, we do not address that issue.

loss payable to the insured by "the amount paid and the present value of all amounts payable" under workers' compensation law. (§ 11580.2, subd (h)(1).) ■ By authorizing a reduction in the loss payable under the uninsured motorist coverage of the policy, the Legislature intended to prevent the insured from recovering twice for the same injury. (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal.App.3d 652, 656-657 [172 Cal.Rptr. 263], citing *Waggaman* v. *Northwestern Security Ins. Co.* (1971) 16 Cal.App.3d 571, 579 [94 Cal.Rptr. 170] (*Waggaman*); see also *California State Auto. Assn. Inter-Ins. Bureau* v. *Jackson* (1973) 9 Cal.3d 859, 869, fn. 13 [109 Cal.Rptr. 297, 512 P.2d 1201].) This court has previously explained that the Legislature's purpose in enacting section 11580.2 was to "shift the cost of an industrial injury sustained by an employee, as the result of the negligence of an uninsured motorist, from the motoring public (who pay the premium for uninsured motorist coverage) to the employer or workmen's compensation carrier." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Jackson, supra,* 9 Cal.3d at p. 869.)

In addition to authorizing a reduction in the loss payable, the Legislature provided for arbitration in the event of disagreement over whether the insured is entitled to receive damages and the amount thereof. (§ 11580.2, subd. (f).) The Legislature also provided that such arbitration would be delayed until workers' compensation benefits have been resolved: "If the insured has or may have rights to benefits, other than nonoccupational disability benefits, under any workers' compensation law, the arbitrator shall not proceed with the arbitration until the insured's physical condition is stationary and ratable. In those cases in which the insured claims a permanent disability, the claims shall, unless good cause be shown, be adjudicated by award or settled by compromise and release *before* the arbitration may proceed. Any demand or petition for arbitration shall contain a declaration, under penalty of perjury, stating whether (i) the insured has a workers' compensation claim; (ii) the claim has proceeded to findings and award or settlement on all issues reasonably contemplated to be determined in that claim; and (iii) if not, what reasons amounting to good cause are grounds for the arbitration to proceed immediately." (*Ibid.,* italics added.) Thus, in order to prevent double recovery, the Legislature has expressly permitted insurers to delay arbitration of uninsured motorist claims while a workers' compensation claim is pending, in the absence of a showing of good cause.[6]

---

[6]This language clearly applies to cases, like the one before us, in which the insured has suffered a permanent disability. It is not entirely clear whether arbitration would proceed before the workers' compensation claim is resolved in cases where the insured does not claim a permanent disability. We need not decide that issue here, as Rangel was awarded permanent disability benefits.

The history of section 11580.2, subdivision (f), confirms the legislative purpose to prevent double recovery. Prior to 1973, although another subsection of the statute provided for reduction of the loss payable in the event of workers' compensation benefits, the provision concerning arbitration did not include the language quoted above. (Compare former § 11580.2, subd. (f), amended by Stats. 1972, ch. 952, § 1, p. 1722, with current § 11580.2, subd. (f).) In 1971, the Court of Appeal held the provision permitting deduction of "the present value of all amounts payable" under workers' compensation law inapplicable to cases in which the amount due under workers' compensation had not yet been determined. (*Waggaman, supra,* 16 Cal.App.3d at pp. 577-578.) The court reasoned that the arbitrator in that case could not calculate and deduct the anticipated, but as yet undetermined, workers' compensation benefits. Although the court recognized that this conclusion might lead to double recovery by the insured, the court decided that the statutory scheme compelled such a result. The court further noted that it could not authorize the insurer to obtain a lien on the workers' compensation award because the availability of such liens was strictly limited by statute, and because such liens fell within the original jurisdiction of the Workers' Compensation Appeals Board. (See Lab. Code, §§ 4901, 4903.)

Thus, the situation as of 1971 was that courts were powerless to prevent an insured from recovering twice for the same injury whenever the workers' compensation award had not yet been determined at the time the insured demanded arbitration. In such cases, the insured would recover once from the uninsured motorist insurer and, because no lien was available, once again from the workers' compensation carrier. While the court enforced the statute as written, it also invited the Legislature to provide a solution to the inherent inequity of double recovery. (*Waggaman, supra,* 16 Cal.App.3d at pp. 579-580.)

The Legislature responded the following year by amending section 11580.2, subdivision (f), to include the current language. The first version of the proposed bill would have subrogated the uninsured motorist carrier to the rights of the insured against the workers' compensation carrier for any amounts awarded as workers' compensation which had not yet been determined at the time of an uninsured motorist arbitration award. (Sen. Bill No. 66 (1972 Reg. Sess.) first version, introduced Jan. 17, 1972, § 1.) The bill would also have given the uninsured motorist insurer a lien against the workers' compensation award. (*Ibid.*) Furthermore, the bill would have amended Labor Code section 4903, which exclusively enumerates the liens allowable against workers' compensation awards, to permit a lien for the

amount paid on an uninsured motorist insurance policy. (Sen. Bill No. 66 (1972 Reg. Sess.) first version, introduced Jan. 17, 1972, § 2.)[7]

The first version of the proposed legislation did not pass. Instead, the Legislature chose a different way to address the problem of double recovery. Rather than subrogating the uninsured motorist insurer to the rights of the insured for, and providing for a lien against, the insured's workers' compensation benefits,[8] the final version of the bill provides for a stay of arbitration until the insured's condition has become stationary and ratable. An insured who claims permanent disability is required to show good cause if he or she wishes arbitration to proceed before the workers' compensation award has been determined. (See § 11580.2, subd. (f).)[9]

Rangel questions the relevance of the arbitration provision. (§ 11580.2, subd. (f).) She claims that the provision applies only to disputes over the liability of the uninsured motorist and the amount thereof. In her case, there was no dispute about the liability of and damages due from the uninsured motorist. Thus, Rangel argues that there was no arbitrable dispute. The flaw in Rangel's argument is that her policy contains clear and unambiguous language providing that any dispute over the amount owing to the insured from the Exchange would be settled by arbitration. The policy, which is incorporated by reference into Rangel's complaint, provides as

---

[7]As noted earlier, liens against workers' compensation awards are only available if the Labor Code expressly provides for them. (Lab. Code, § 4901; *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196-197 [113 Cal.Rptr. 206, 520 P.2d 1022].)

[8]Rangel argues that section 11580.2, subdivision (g), does, in fact, subrogate the insurer to the rights of the insured against the workers' compensation carrier. She bases her argument on subdivision (g), which states: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made. The action may be brought within three years from the date that payment was made hereunder." However, we do not agree that "any person legally liable for the injury or death" refers to a class broader than tortfeasors. (Compare *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 954, fn. 7 [268 Cal.Rptr. 624] [This case discusses offsets against recovery for *under*insurance and analyzes section 11580.2, subdivision (p)(4), which encompasses broader language than does subdivision (g).].) As we will discuss below, the insurer cannot assert a lien against the insured's workers' compensation award.

[9]The Exchange argues that the loss payable under the policy cannot be determined until the workers' compensation claim has been resolved; it therefore urges us to adopt the view that even if the insured shows good cause to proceed with arbitration immediately, the insurer has no obligation to *pay* the benefits until the amount of the workers' compensation award is known and can be deducted. That precise issue is not before us in this case because Rangel's uninsured motorist claim did not proceed to arbitration and, therefore, no arbitration award was made. Thus, it is not necessary for us to decide what the obligations of the insurance company might be if the insured showed good cause to proceed with arbitration while a workers' compensation claim was pending.

follows: "If the insured . . . and the Exchange are in disagreement as to whether any one of them are legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, *or do not agree as to the amount of such damages which may be owing under this Part*, then upon the demand of either, those said matters in disagreement shall be settled by arbitration . . . ." (Italics added.) The Exchange clearly indicated in its answer that the amount owing under the policy was in dispute.

The policy's arbitration clause is broader than that required by the statute. The statute requires only that the damages due from the uninsured motorist be subject to arbitration. In contrast, the policy's arbitration clause encompasses disputes concerning the amount owing under the insurance policy as well as the damages due from the uninsured motorist.

An insurance policy may expand the issues subject to arbitration beyond the requirements of section 11580.2. (*Pelger* v. *California Casualty Indemnity Co.* (1980) 104 Cal.App.3d 861, 864 [163 Cal.Rptr. 891].) Other insurance policies containing language similar to the arbitration language in Rangel's uninsured motorist policy have been interpreted to expand the scope of arbitration beyond the statutory requirements. In *Fisher* v. *State Farm Mut. Auto Ins. Co.* (1966) 243 Cal.App.2d 749 [52 Cal.Rptr. 721] (*Fisher*), the Court of Appeal considered whether an uninsured motorist insurance carrier was bound by an arbitration award where the arbitrator failed to reduce the loss payable by amounts paid under a medical payment coverage, as authorized by former section 11580.2, subdivision (g)(2) (later subdivision (h)(2)).[10] The court first noted that the arbitration provision in the insurance contract was broader than that required by section 11580.2, subdivision (f), which required arbitration only of the issue of "whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof . . . ." (*Fisher, supra*, 243 Cal.App.2d at p. 751, internal quotation marks omitted.) The contract between Fisher and State Farm provided instead: "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, *or do not agree as to the amount payable hereunder*, then each party shall . . . select a competent and disinterested arbitrator. . . . The arbitrators shall then hear and determine the question or

---

[10]Former section 11580.2, subdivision (g)(2), provided that any "loss payable under the terms of the uninsured motorist . . . coverage . . . may be reduced . . . [b]y" the amounts paid under medical payment coverage. This subdivision was later renumbered as (h)(2). (Stats. 1975, ch. 194, § 2, p. 562.) The insurance policy at issue in *Fisher* expressly provided that the loss payable would be reduced by the amount of such payments.

questions                                              so                                                 in
dispute. . . ." (*Fisher, supra,* 243 Cal.App.2d at p. 750, internal quotation marks omitted, italics added.) The *Fisher* court noted that the phrase "the amount payable hereunder" referred to the loss payable under the policy and not to the liability of the uninsured motorist to the insured. (*Id.* at p. 752, fn. 2.) Reasoning that the parties had validly agreed to submit to arbitration more than what the statute required, the court held that the parties were bound by the decision of the arbitrator regarding the amount payable under the policy's uninsured motorist coverage. (*Id.* at p. 752.)

Other California cases interpreting language similar to that in Rangel's policy have also confirmed that such language gives the arbitrator broader jurisdiction than required by section 11580.2. For example, an agreement that the parties would arbitrate the question whether "the insured is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle under this Part II or. . . *the amount of payment which may be owing hereunder*" has been held to be broader in scope than the minimum required by section 11580.2, subdivision (f). (*Campbell* v. *Farmers Ins. Exchange* (1968) 260 Cal.App.2d 105, 110 [67 Cal.Rptr. 175] (*Campbell*) [italics in original].) In that case, the court held that the emphasized language related "not merely to the amount of damages recoverable from the uninsured motorist, but include[d] the issue of the amount payable under the terms of the policy." (*Id.* at p. 111; see also *Pelger* v. *California Casualty Indemnity Co., supra,* 104 Cal.App.3d at pp. 864-866, citing *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341], and cases cited therein; *Wallace* v. *Farmers Ins. Group* (1986) 177 Cal.App.3d 735, 738-740 [223 Cal.Rptr. 171]; *Hartford Accident & Indemnity Co.* v. *Jackson* (1983) 150 Cal.App.3d 111, 114-115 [197 Cal.Rptr. 477].)

The arbitration clause in Rangel's policy was similar to the arbitration clauses in *Fisher, supra,* 243 Cal.App.2d 749, and *Campbell, supra,* 260 Cal.App.2d 105. The clause provided that the parties would submit to the arbitrator not only the liability of the uninsured motorist to the insured, but also the amount "owing under this Part." "This Part" refers to part IV of the insurance policy, entitled "Uninsured Motorist," which includes the condition that the loss payable will be reduced by the amount paid and the present value of all amounts payable under workers' compensation law. Virtually identical language in an insurance policy issued by the Exchange has been interpreted to refer not to "[the damages] which would be owed by the uninsured motorist to the insured," but rather to "those recoverable, by the insured, under the uninsured motorist provisions of the contract." (*Cothron* v. *Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 858 [163 Cal.Rptr. 240].)

█ Since it is permissible to expand the issues subject to arbitration beyond the requirements of section 11580.2 (*Fisher, supra,* 243 Cal.App.2d at p. 750; see also *Pelger* v. *California Casualty Indemnity Co., supra,* 104 Cal.App.3d at p. 864; *Campbell, supra,* 260 Cal.App.2d at p. 110), the scope of arbitration will be determined by the contract between the insurer and the insured. Even when the policy expands the scope of arbitration beyond the minimum statutory requirements, the provisions of section 11580.2 continue to apply. (E.g., *Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p.p. 486-487 [applying the one-year statutory time bar (§ 11580.2, subd. (i)) to an action to compel arbitration under an expanded arbitration clause].) █ Because the policy between the Exchange and Rangel provides for arbitration in the event of a dispute over the loss payable, and because Rangel's workers' compensation claim was not resolved until May 1986, there was an arbitrable issue which could be delayed under section 11580.2 unless good cause was shown.

The dissent dismisses as immaterial both the parties' agreement to arbitrate the amount of the reduction for workers' compensation and *Fisher, supra,* 243 Cal.App.2d 749, which enforced such an agreement. Instead, the dissent argues that arbitration can proceed even though the amount of the reduction cannot be determined until the workers' compensation proceeding has ended. The dissent's position might have merit if the parties had not agreed to arbitrate the amount of the reduction. However, "[w]here the arbitration clause in the insurance policy is broader than the statute, the arbitration of additional issues may be required. Cases involving such arbitration agreements must be distinguished from those which are concerned only with the statutory language." (*Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p. 481.)

█ Rangel complains that the Exchange was aware of possible good cause to proceed with arbitration sooner and that the Exchange was therefore in bad faith for not proceeding with the uninsured motorist claim. However, she agreed to arbitrate under the rules of the American Arbitration Association, and that organization ordered the arbitration to be held in abeyance. The order was proper because her attempt to show good cause was plainly inadequate. In her demand for arbitration, Rangel asserted that she had "not completed all medical treatment to reach a permanent and stationary position." This is a reason to *delay* arbitration (see § 11580.2, subd. (f)), not a reason to advance it.

█ Rangel further asserts that this case is controlled by *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103] (*Silberg*). In *Silberg,* we held that a medical insurer's failure to pay

medical bills incurred by an insured pending resolution of an ongoing workers' compensation proceeding violated the insurer's duty of good faith and fair dealing. However, as the Exchange correctly points out, *Silberg*'s reasoning is inapplicable here.

*Silberg* involved a medical insurance policy which contained ambiguous language. We, therefore, construed the policy language strictly against the insurer. (*Silberg, supra,* 11 Cal.3d at pp. 464-466.) Here, unlike *Silberg*, Rangel seeks *uninsured motorist* benefits under an automobile insurance policy which contains clear and unambiguous language providing for a deduction from the uninsured motorist benefits of the amount paid or payable under workers' compensation and for a delay of arbitration in the event of a dispute over benefits owed under the policy.

Our decision in *Silberg* also rested in part on the availability of a lien for medical expenses in the workers' compensation proceeding. (*Silberg, supra,* 11 Cal.3d at p. 461.) We reasoned that if the medical insurer had made the payments, it could have filed a lien for payments made and could have recouped that amount from the proceeds of the workers' compensation award. However, as we will discuss, no such lien is available to an uninsured motorist insurer for payments made under such coverage.[11]

The Court of Appeal in the case before us erroneously concluded that the Exchange could assert a lien in the workers' compensation proceeding for reimbursement of medical expenses pursuant to Labor Code section 4903, subdivision (b).[12] The conclusion is based on mistakes of fact and law. Rangel did not specifically allege in her complaint that she intended to pay

---

[11]As the Exchange correctly notes, uninsured motorist coverage is liability coverage, as it substitutes for the damages recoverable from the uninsured motorist. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Jackson, supra,* 9 Cal.3d at p. 867; see also *Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760, 770-771 [163 Cal.Rptr. 881].) To characterize the statutory uninsured motorist coverage as medical coverage would significantly alter the legislative scheme.

[12]Labor Code section 4903 provides in pertinent part:

"The [workers' compensation] appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). . . . The liens which may be allowed hereunder are as follows:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) *The reasonable expense incurred by or on behalf of the injured employee,* as provided by Article 2 (commencing with Section 4600) and, to the extent the employee is entitled to reimbursement under Section 4621, medical-legal expenses as provided by Article 2.5 (commencing with Section 4620) of Chapter 2 of Part 2." (Italics added.)

Labor Code section 4600 provides in pertinent part:

"Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his or her neglect or refusal seasonably to do so, the employer is

medical bills with the uninsured motorist benefits. Thus, the Court of Appeal's factual premise was mistaken. Moreover, although Rangel argued before the Court of Appeal that a lien was available to the Exchange, she now concedes that no such lien was available.

As noted above, there can be no lien against a workers' compensation award for any kind of debt except as the Labor Code specifically provides. (Lab. Code, § 4901.) Labor Code section 4903 itemizes the liens that the appeals board allows against a compensation award. ■ "The [Workers' Compensation Appeals Board] may not allow a lien against an award of workers' compensation benefits in satisfaction of an obligation not specified in [Labor Code section 4903,] subdivisions (a) through (i); if it does so, it acts in excess of its authority and without jurisdiction." (*Coltherd* v. *Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 455, 461 [275 Cal.Rptr. 130] (*Coltherd*), citations omitted [annulling order which awarded uninsured motorist insurer a lien on workers' compensation benefits]; see also *Prudential Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 776, 780 [151 Cal.Rptr. 537, 588 P.2d 239].) ■ This list of allowable liens does not include the payment of uninsured motorist insurance benefits. (*Coltherd, supra*, 225 Cal.App.3d at p. 461.)

■ Thus, the Court of Appeal erred when it held that the Exchange could have asserted a lien on Rangel's pending workers' compensation claim. The benefits required under the uninsured motorist coverage statute are a substitute for damages owed by the uninsured driver; they are not medical benefits.[13] Section 11580.2 provides that "[n]o policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle" may be issued in California unless the policy contains provisions "insuring the insured, the insured's heirs or legal representative for all sums within the [specified] limits which he, she, or they, as the case may be, shall be legally entitled to recover as *damages* for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle." (Italics added.)

"Damages," for purposes of this statute, have been interpreted to mean "such damages as a California court would award" (*Ramirez* v. *Wilshire Ins.*

---

liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

We held in *Silberg* that Labor Code section 4903, subdivision (b), permitted an insurer who had provided medical benefits to assert a lien in a workers' compensation proceeding to recover payments made on behalf of the plaintiff. (*Silberg, supra*, 11 Cal.3d at p. 461.)

[13]A separate section of the Exchange's form insurance policy, part II, provided coverage for medical expenses incurred within one year of an accident. Under that part, payments could be made directly to the provider of the medical services. That section of the policy is not at issue here.

*Co.* (1970) 13 Cal.App.3d 622, 631 [91 Cal.Rptr. 895]); they are not a form of medical benefits. In paying uninsured motorist benefits, the insurer cannot be said to have paid the "reasonable [medical] expense incurred by or on behalf of the injured employee." (See Lab. Code, § 4903, subd. (b).)
█ Unlike the separate provision for medical expenses in part II of the policy, which provides for direct payment to the health care provider, the insurer would have no assurance that the uninsured motorist benefits would be used to pay for medical treatment. Since uninsured motorist benefits are not medical expenses for the purpose of Labor Code section 4903 (see *Coltherd, supra,* 225 Cal.App.3d at p. 461), no lien is available to uninsured motorist carriers in the workers' compensation proceedings.

This conclusion is supported by the history of section 11580.2, subdivision (f). As discussed above, after the decision in *Waggaman, supra,* 16 Cal.App.3d 571, the Legislature amended this section to prevent an injured person from recovering both uninsured motorist benefits and workers' compensation benefits for the same injury. The Legislature first considered amending the section to permit the uninsured motorist insurer to assert a lien against the workers' compensation award, but instead adopted the present approach, which permits the insurer to wait until the workers' compensation award has been determined before paying benefits to the insured, in the absence of a showing of good cause. (See Sen. Bill No. 66 (1972 Reg. Sess.) first version, introduced Jan. 17, 1972, §§ 1, 2; § 11580.2, subd. (f).) Thus, in response to *Waggaman*, which indicated that Labor Code section 4903 does not authorize uninsured motorist insurers to assert liens on workers' compensation claims, the Legislature considered and rejected a proposal to allow such liens.

Since no lien is available for an uninsured motorist coverage carrier, without a delay of arbitration over the loss payable, an insurer would be forced to incur a liability which it had never assumed. The insurer would be left to seek reimbursement of any overpayment from its insured with no guarantee of success.[14] In fact, that is what occurred in the present case. Rangel received $15,000 from the Exchange in addition to her workers' compensation payment—$15,000 more than she was entitled to receive. By reading the policy language in conjunction with section 11580.2, such inequities can be avoided. Under the statute, arbitration is delayed until the workers' compensation claim is resolved. Because the loss payable is subject

---

[14]Once the parties have submitted their dispute to arbitration, there is no legal recourse available to pursue reimbursement for overpayment. Under *Fisher, supra,* 243 Cal.App.2d 749 the parties are bound by the arbitration decision relating to the amount payable under the uninsured motorist coverage. If, on the other hand, the parties have not entered into arbitration, the insurer is relegated to filing a lawsuit for overpayment.

to arbitration under the policy, payment may be delayed until the amount of the loss payable has been determined in arbitration. This result is wholly consistent with the Legislature's goal of avoiding double recovery.[15]

■    Finally, Rangel asserts that the Exchange may have owed her benefits, such as general damages, that were not compensable by workers' compensation. She contends that the Exchange had the duty to pay her benefits for such items as foreseeable economic loss regardless of the outcome of the workers' compensation case. This argument lacks merit. Section 11580.2, subdivision (h), specifically provides that "[a]ny loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced: (1) By the amount paid and the present value of all amounts payable to him or her, his or her executor, administrator, heirs or legal representative under any workers' compensation law, exclusive of nonoccupational disability benefits." (Italics added.) The terms of the insurance policy were nearly identical to this statutory provision. The language is clear and unambiguous. In Jarrett v. Allstate Ins. Co. (1962) 209 Cal.App.2d 804 [26 Cal.Rptr. 231], the Court of Appeal dealt with an uninsured motorist provision similar to that in Rangel's policy and held that the insured had bargained for a policy in which workers' compensation benefits would be deducted from the uninsured motorist policy limit, not the total damages. (Id. at p. 813.) Thus, the insurer is only liable for the excess, if any, of the policy limit over the workers' compensation benefits. If there is no excess, the uninsured motorist insurer has no duty to pay general damages that are not compensable by workers' compensation. (See Interinsurance Exchange v. Marquez, supra, 116 Cal.App.3d 652, 657; Jarrett v. Allstate Ins. Co., supra, Cal.App.2d 804, 812-813.) A contrary finding would once again force the insurer to assume liability for which it never bargained.

We conclude that under the circumstances of this case the Exchange was not obligated to pay uninsured motorist benefits during the pendency of Rangel's workers' compensation claim. Therefore, the Exchange did not breach its duty of good faith and fair dealing by delaying payment pending the outcome of the workers' compensation proceeding. It also follows that the Exchange did not engage in unfair claims settlement practices in violation of section 790.03, subdivision (h). Accordingly, the Court of Appeal erred when it held that Rangel's complaint stated a cause of action against

---

[15]The dissenting opinion argues that it is inequitable to make the timing of arbitration turn upon whether or not the insured has a workers' compensation claim arising out of the same accident. However, the Legislature has expressly declared that insureds with workers' compensation claims are to be treated differently. (§ 11580.2, subds. (h), (f).) This makes sense, because it is only in such cases that the problem of double recovery arises.

the Exchange for breach of the covenant of good faith and fair dealing and for violation of its statutory duties under section 790.03, subdivision (h).

DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.,** Dissenting.—When, as here, liability and damages are not in dispute, may an insurer refuse to pay an insured's claim for uninsured motorist benefits until there has been a determination of the insured's separate claim in a workers' compensation proceeding arising from the same accident? The majority holds that because the insured failed to fully comply with certain statutory procedures relating to arbitration, and because the insurer would not be entitled to a lien against the insured's workers' compensation recovery, the insurer had no duty to pay the insured's claim until the workers' compensation proceeding concluded eight and one-half years after the injury to the insured.

I disagree. The insured was not required to comply with the statutory arbitration procedure, because the statute applies only when there is a dispute between the insured and the insurer as to the liability of the uninsured motorist or the amount of damages the insured is entitled to recover from the uninsured motorist. There was no such dispute in this case. The majority penalizes the insured for supposed noncompliance with an inapplicable statute. Moreover, the fact that the insurer is not entitled to a lien against the insured's eventual workers' compensation recovery is irrelevant. The insurer's interests are amply protected by its right of action to recover any excess proceeds; the absence of a statutory alternative to this right of action does not justify the insurer's disregard of the insured's rights to prompt payment when liability and damages are reasonably clear.

BACKGROUND

Plaintiff Alice Casarez Rangel (Rangel) was insured by defendant Interinsurance Exchange of the Automobile Club of Southern California (Interinsurance) when she sustained injuries in a hit-and-run accident caused by an uninsured motorist in February 1978. Rangel promptly filed a claim with Interinsurance. She also filed a workers' compensation claim. Interinsurance did not at any time dispute either the liability of the uninsured motorist who

injured Rangel, or the extent of Rangel's damages. But Interinsurance refused to pay any uninsured motorist benefits to Rangel on the basis that her employer's workers' compensation insurance carrier was liable for medical expenses.

Six and one-half years after the accident, in September 1984, Interinsurance issued a $15,000 draft payable to Rangel contingent on her execution of a release and agreement for a lien to be filed in the pending workers' compensation proceeding. The workers' compensation proceeding concluded in September 1986, eight and one-half years after Rangel's injury.

In September 1985, Rangel sued Interinsurance for breach of the duty of good faith and fair dealing and for breach of statutory duties under the Unfair Practices Act. In January 1988, Interinsurance made a motion for summary judgment, arguing that "as a matter of law, [it] had no duty to pay plaintiff any uninsured motorist benefits until after her workers' compensation claim was determined." The trial court denied the motion; citing *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 459-461 [113 Cal.Rptr. 711, 521 P.2d 1103], the court found Interinsurance's argument "contrary to existing decisional law."

The case was then transferred to a second judge. Interinsurance next brought a motion for judgment on the pleadings, making the same legal argument as before, and contending that the first judge's ruling on the motion for summary judgment was erroneous. The second judge granted the motion.

Rangel appealed and the Court of Appeal reversed the trial court's judgment, holding that the Insurance Code did not authorize the insurer to await the final resolution of its insured's workers' compensation claim before carrying out its duty to pay benefits due under the policy.[1]

---

[1]This case comes to us after the trial court granted what Interinsurance labeled a motion for judgment on the pleadings. Ordinarily, review of a judgment rendered on a motion for judgment on the pleadings is limited to the face of the pleadings. (See, e.g., *Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738].) But here, Interinsurance asked the trial court in ruling on its motion for judgment on the pleadings to consider all the evidence and papers it had submitted in connection with its earlier motion for summary judgment. The trial court did so. When a trial court considers matters outside the pleadings in ruling on a motion for judgment on the pleadings, resulting judgments are reviewed as judgments arising from motions for summary judgment. (See, e.g., *O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712]; *Christian* v. *County of Los Angeles* (1986) 176 Cal.App.3d 466, 468 [222 Cal.Rptr. 76].) It is therefore

## DISCUSSION

### 1. The Uninsured Motorist Law

The primary dispute in this case concerns the Uninsured Motorist Law, Insurance Code section 11580.2 et seq.[2] California courts have made clear that section 11580.2 is "a remedial statute enacted for the purpose of forcing insurers to make available coverage by which insureds can protect themselves from the menace of uninsured motorists. Ambiguous language in the statute must be given a construction that advances, not thwarts, its remedial purpose." (*National Auto. & Casualty Ins. Co.* v. *Frankel* (1988) 203 Cal.App.3d 830, 836, fn. 2 [250 Cal.Rptr. 236]; accord, e.g., *Hefner* v. *Farmers Ins. Exchange* (1989) 211 Cal.App.3d 1527, 1530-1531 [260 Cal.Rptr. 221]; *State Farm Mut. Auto Ins. Co.* v. *Lykouresis* (1977) 72 Cal.App.3d 57, 61 [139 Cal.Rptr. 827].)

The majority concludes that an insurer has no duty to pay uninsured motorist benefits to its insured—even when liability and the extent of damages are not disputed—until there has been a determination of the insured's workers' compensation claim. This conclusion is based on the majority's interpretation of subdivision (f) of section 11580.2.

That subdivision, however, does not justify a delay in payment when there is no dispute that is subject to mandatory arbitration. It provides, in pertinent part: "The policy or an endorsement . . . shall provide that *the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made* by agreement between the insured and the insurer or, *in the event of disagreement, by arbitration.* . . . If the insured has or may have rights to benefits . . . under any workers' compensation law, the arbitrator shall not proceed with the arbitration until the insured's physical condition is stationary and ratable. In those cases in which the insured claims a permanent disability, the claims shall, unless good cause be shown, be adjudicated by award or settled . . . before the arbitration may proceed. Any demand or petition for arbitration shall contain a declaration . . . stating whether (i) the insured has a workers' compensation claim; (ii) the claim has proceeded to . . . award or settlement . . . ; and (iii) if not, what reasons amounting to good cause are grounds for the arbitration to proceed immediately." (§ 11580.2, subd. (f), italics added.)

In a previous decision, this court has stated: "[T]he word 'damages' in this section means the damages which the insured is entitled to recover from the

---

appropriate on review to consider the evidence Interinsurance adduced in support of its motion in the trial court.

[2]All further unlabeled statutory references are to the Insurance Code.

uninsured motorist," not damages that the insured may recover from the insurer. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341].) The statute "requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages." (*Ibid.*)

In January 1979, Rangel filed a demand for arbitration on a form supplied by the American Arbitration Association; the demand specifically requested that the arbitration commence. The printed form included a "declaration in accordance with section 11580.2[, subdivision] (f) of the California Insurance Code." Rangel checked the boxes indicating that she had a workers' compensation claim, and that "[t]he claim has not proceeded to findings and award on all issues reasonably contemplated to be determined in that claim for the following reasons amounting to good cause." She declared that the good cause was that she had not completed all medical treatment to reach a permanent and stationary condition. The majority reasons that Rangel failed to adequately comply with section 11580.2, subdivision (f) because she gave no reason why the arbitration should commence immediately.[3]

The problem with this reasoning is that Rangel was not required in any event to comply with the procedures of section 11580.2, subdivision (f). Because there was no disagreement between the parties that the uninsured motorist statute required to be arbitrated, the arbitration provision of section 11580.2 did not apply.

There was no dispute between insurer and insured "whether the insured shall be legally entitled to recover damages" from the uninsured motorist. Nor was there any dispute regarding "the amount thereof." Because there was no dispute as to either liability of the uninsured motorist or the amount of damages that Rangel was entitled to recover from the uninsured motorist, there was no dispute as to which arbitration was statutorily required. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 14 Cal.3d at p. 480.) Indeed, although Rangel did file a demand for arbitration of nonstatutory issues, Interinsurance finally paid Rangel the maximum benefit of $15,000 without any arbitration taking place.

---

[3]Notably, the printed form supplied to Rangel failed to conform to the statute. Section 11580.2, subdivision (f) requires the insured to state "what reasons amounting to good cause are grounds for the arbitration to proceed immediately." But the form supplied to Rangel, which on its face purported to be a declaration in compliance with subdivision (f), required the insured to respond to a different inquiry: "The claim has not proceeded to findings and award on all issues reasonably contemplated to be determined in that claim for the following reasons." Instead of asking why the arbitration should proceed immediately, in conformance with the statute, the form asked why the workers' compensation proceeding had been delayed. Rangel supplied the information she was requested to supply; any defect in her showing of good cause is attributable to the defects of the form she was required to execute.

The majority also makes much of the fact that the policy in this case provides for arbitration of issues other than those required by section 11580.2, subdivision (f). This is correct, but immaterial. The subdivision is concerned solely with the two issues it requires to be arbitrated in the event of a dispute: the uninsured motorist's liability to the insured, and the amount of damages the insured is entitled to recover from the uninsured motorist. As this court has emphasized, "[c]ases involving such arbitration agreements [covering additional issues] must be distinguished from those which are concerned only with the statutory language." (*Freeman* v. *State Farm Mut. Auto. Ins. Co., supra*, 14 Cal.3d at p. 481.) Section 11580.2, subdivision (f) simply does not implicate other issues that may or may not be arbitrable under separate policy provisions.

The majority attempts to avoid the Legislature's limits on section 11580.2, subdivision (f), asserting that "[e]ven when the policy expands the scope of arbitration beyond the minimum statutory requirements, the provisions of section 11580.2 continue to apply," and citing *Freeman* v. *State Farm Mut. Auto Ins. Co., supra*, 14 Cal.3d 473 in support of this assertion. But the majority's assertion does not withstand analysis. The one-year statute of limitations of section 11580.2, subdivision (i) that the court found applicable to nonstatutory arbitrations in *Freeman* applied to *any* "cause of action . . . under any policy or endorsement provision . . .", regardless whether the cause of action arose on statutory or nonstatutory grounds. Subdivision (i) is on its face broader than subdivision (f), which does not include nonstatutory arbitrations within its ambit.

Nor does *Fisher* v. *State Farm Mut. Auto. Ins. Co.* (1966) 243 Cal.App.2d 749 [52 Cal.Rptr. 721] support the majority's view. That case merely held that when the parties to an uninsured motorist insurance contract have agreed to arbitrate additional issues beyond those section 11580.2, subdivision (f) requires to be arbitrated, the contractual arbitration clause should be enforced. But that proposition is not at issue here. The question is not whether Rangel and Interinsurance were required to arbitrate a dispute made arbitrable by the contract; they were. The question is whether their contractual dispute was subject to the requirement of section 11580.2, subdivision (f) that the insured set forth "what reasons amounting to good cause are grounds for the arbitration to proceed immediately."

Accordingly, even if Rangel had failed to file a demand under section 11580.2, subdivision (f), it would be unjust to penalize her for this. To hold otherwise, as the majority does, expands the coverage of the subdivision beyond what the Legislature intended, and allows a delay in payment when liability and damages are clear, resulting in a construction that thwarts the remedial purpose of the statute.

Anomalously, the majority's approach gives insureds whose claims for uninsured motorist benefits are disputed greater rights to speedy recovery than those insureds whose claims are undisputed. Under the statute, when there is a dispute between the insured and insurer regarding the liability of the uninsured motorist, the insured may demand that the arbitration proceed in the absence of a determination of workers' compensation benefits. (§ 11580.2, subd. (f).) But when there is no arbitrable controversy between insurer and insured, under the majority's approach the insured may not recover uninsured motorist benefits until after the final resolution of the workers' compensation proceeding. This result, in my view, does not make sense.

The majority also claims support for its conclusion in the language of subdivision (h) of section 11580.2. That subdivision provides, in pertinent part: "An insured entitled to recovery under the uninsured motorist endorsement or coverage shall be reimbursed . . . without being required to sign any release or waiver of rights to which he or she may be entitled under any other insurance coverage applicable; . . . Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced: [¶] (1) By the amount paid and the present value of all amounts payable . . . under any workers' compensation law . . . ."

But this subdivision does not mean that an insurer has no duty to pay uninsured motorist benefits if a possible future workers' compensation award could cover the amount paid. The first sentence of subdivision (h) of section 11580.2 provides that the insured "shall be reimbursed" by the insurer and shall not be required to waive any rights under "any other insurance coverage applicable." This broad language includes workers' compensation insurance. As for subdivision (h)(1), the cases have held that it is meant to " 'permit[] the parties to an uninsured motorist insurance policy to contract for a reduction of the loss payable' " by the amount paid and the present value of amounts payable under workers' compensation. (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal.App.3d 652, 656-657 [172 Cal.Rptr. 263]; *Coltherd* v. *Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 455, 459 [275 Cal.Rptr. 130]; *Waggaman* v. *Northwestern Security Ins. Co.* (1971) 16 Cal.App.3d 571, 579 [94 Cal.Rptr. 170].) It does not give the insurer a unilateral right to withhold payments.

2. *The Loss-payable Reduction Clause*

In this case, the uninsured motorist provisions of the insurance contract contained a clause stating that "any loss payable to or for any person shall be reduced by the amounts paid and the present value of all amounts payable to

such person under any worker's compensation or workmen's compensation law, exclusive of non-occupational disability benefits." The language of this clause is similar to that of section 11580.2, subdivision (h)(1). The critical question in this case is what effect this clause in the contract has on the duties of the insurer and the insured when there is no controversy between the parties that is subject to statutorily required arbitration, and the insured's claim for workers' compensation benefits has not been resolved.

Interinsurance contends that its contractual duty to pay benefits cannot mature until the amounts paid and payable under the insured's workers' compensation claim have been determined. Because such amounts had not been determined when Interinsurance paid Rangel's claim, Interinsurance contends that it breached no duty to Rangel. Careful examination, however, shows that this argument is unmeritorious.

*Waggaman* v. *Northwestern Security Ins. Co., supra,* 16 Cal.App.3d 571, is instructive. There, the court considered the meaning of a loss-payable reduction clause under section 11580.2, subdivision (h)(1) in a case in which the insurer contended that an arbitrator had erroneously refused to deduct the present value of benefits that had not yet been determined in the insured's workers' compensation proceeding. The language in the policy at issue was in substance identical to the policy language in this case. It provided: " 'Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person shall be reduced: (1) By the amount paid and the present value of all amounts payable to him under any workmen's compensation law exclusive of non-occupational disability benefits.' " (*Waggaman, supra,* at p. 574, italics omitted.) The *Waggaman* court held that this clause referred to " 'instances where the claimant has *already secured* an amount pursuant to agreement (compromise and release) or by order (permanent disability rating), but which amount, although fixed and determined, has not yet been paid to the claimant at the time of the arbitration hearing.' " (*Id.* at p. 577, italics added.) The court then confirmed the arbitrator's award. (*Id.* at p. 580.)

Nothing in the language of the insurance policies in *Waggaman* or in this case expressly indicates that the insurer is entitled to delay payment of an undisputed claim for uninsured motorist benefits merely because the insured's claim for workers' compensation has not yet been determined. Although Interinsurance does not explicitly say so, in essence it contends that the loss-payable reduction clause in the policy makes determination of the insured's claim for workers' compensation benefits an *implied* condition precedent to the insurer's duty to pay uninsured motorist benefits.

Should the policy be construed to contain such an implied condition precedent? This question can be resolved under familiar principles of insurance contract interpretation. California courts generally resolve ambiguities

in insurance contracts in favor of coverage, and construe exceptions and limitations narrowly. (See, e.g., *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253]; *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].) Here, Interinsurance asks this court to imply into the contract a provision making the insurer's duty to pay benefits conditional on resolution of the insured's workers' compensation claim. This contention is analytically similar to arguments that exclusionary clauses should be broadly, not narrowly, construed. Yet, " '[a]s we have declared time and again, "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect" . . . .' " (*Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 808.) Under this rule, a court may not broadly construe a policy exception so as to defeat coverage. By the same token, a court should not imply into a policy a condition precedent that would defeat the insured's reasonable expectation of a prompt recovery.

Thus, I conclude that when as here the parties have contracted for a reduction of the loss payable, this clause gives the insurer the right to deduct only the amounts received by the insured and the present value of amounts awarded but not yet paid. The insurer has no right to withhold payment on the theory that there might be a workers' compensation recovery in the future; instead, the insurer must compensate its insured under the policy and seek recovery of the workers' compensation offset when that amount is ascertained. (*Waggaman* v. *Northwestern Security Ins. Co., supra,* 16 Cal.App.3d at pp. 577-578; *Coltherd* v. *Workers' Comp. Appeals Bd., supra,* 225 Cal.App.3d at p. 460, fn. 4.) Consistent with the standard principles of insurance contract interpretation, this court should not imply a contrary condition precedent into an otherwise silent policy.

### 3. *The Insurer's Remedy*

In *Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d 452, this court held that a medical insurer that failed and refused to pay an insured's claim for hospital benefits on the assertion "that it was entitled to wait until the pending [workers'] compensation proceeding was concluded" had, as a matter of law, breached the duty of good faith and fair dealing. (*Id.* at p. 461.)

In *Silberg,* there was "no question" that if the insurer had made payments, it "could have asserted a lien in the [workers'] compensation proceeding to recover the payments it had made and it would have been entitled to payment from the proceeds of the award." (*Silberg* v. *California Life Ins. Co., supra,* 11 Cal.3d at p. 461.) The majority distinguishes *Silberg* on the basis

that the insurer in this case had no statutory or other ground to assert a lien against any possible workers' compensation recovery by Rangel. (Maj. opn., *ante*, pp. 14, 15.) It reasons that liens against workers' compensation awards are available only if the Labor Code expressly permits them, and there is no Labor Code provision authorizing a lien by uninsured motorist carriers. (Maj. opn., *ante*, p. 15.)

This is correct but irrelevant. The fact that an insurer is not entitled to obtain a lien against a workers' compensation recovery does not mean it has no recourse. When a policy providing uninsured motorist coverage contains a loss-reduction provision authorized by section 11580.2, subdivision (h)(1), and the insurer has paid benefits before determination of the insured's workers' compensation claim, the insurer may proceed against the insured who retains any excess amounts that should be offset under the uninsured motorist policy, seeking remedies for breach of contract. As the court explained in *Coltherd* v. *Workers' Comp. Appeals Bd.*, *supra*, 225 Cal.App.3d at page 460, footnote 4, when a policy of insurance contains a loss-reduction provision, the insured's "retention of, or claim to, any such excess amounts [resulting from a workers' compensation award] would not be a 'double recovery,' but a possible breach of [the insured's] contractual obligations under the policy, for which [the insurer] can pursue its remedies in a civil action." From the insurer's standpoint, this right of action may not be as desirable as a lien, but it is the recourse to which the insurer is entitled.[4]

### 4. *The Insurer's Duty*

The majority's preoccupation with the insurer's remedies against the insured is misguided for another and more fundamental reason. Even if the insurer had no means of recovering uninsured motorist benefits paid to an insured who later receives workers' compensation (as I have explained, the insurer has a remedy that the majority chooses to ignore), this lack of remedy would not excuse the insurer from its duty to its own insured. For instance, if an insured is injured in an automobile accident completely unconnected with the insured's employment, the insured will have no workers' compensation claim. If an uninsured motorist is liable for the injuries,

---

[4]California is in the minority of jurisdictions in allowing the insurer even this recourse. Among those jurisdictions that have considered whether an insurer can rely on a clause in an uninsured motorist policy to reduce payments by the amount of other insurance benefits, the majority has found such clauses void or unenforceable. (See 2A Larson, Workmen's Compensation Law (1992) § 71.23(b), pp. 14-26 to 14-30 and fns. 31-32 [collecting cases].) By holding that an insurer need not pay an uninsured motorist claim until workers' compensation proceedings have been resolved—even when there is no dispute regarding liability or damages—the majority moves this state's minority position even farther to the extreme, depriving automobile insurance purchasers of the protection they reasonably anticipate.

and the amount of the insured's damages are reasonably clear, even the majority would agree, I assume, that the insurer must pay uninsured motorist benefits promptly. The duty to pay would not be impliedly conditioned on whether the insurer can recover from the motorist who caused the accident.

Under the statutory scheme, the insured's right to payment matures when the insured has been injured by an uninsured motorist and there is no dispute regarding the liability of the motorist and the extent of damages. "The statutory scheme contemplates that once the uninsured motorist coverage comes into play, the injured insured has resort to the full coverage for which he [or she] has paid." (*Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal.App.3d 1078, 1082 [95 Cal.Rptr. 427].)

Accordingly, in this case Interinsurance had no right to withhold payments to Rangel when liability and the extent of damages caused by the uninsured motorist were not disputed. Contrary to the majority's conclusion, section 11580.2 does not give the insurer a unilateral right to withhold benefits pending determination of a workers' compensation proceeding.

"[A]n insurer holds itself out as a fiduciary." (*Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208, 215 [228 Cal.Rptr. 160, 721 P.2d 41].) When an insurer " 'fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' " (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920 [148 Cal.Rptr. 389, 582 P.2d 980], quoting *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032].)

Here, Rangel waited six and one-half years for payment of a claim that Interinsurance was not entitled to delay. A delay of this length may cause serious harm to the insured, who has purchased insurance to obtain prompt compensation for covered injuries. The asserted justification—the pendency of workers' compensation proceedings—provides no excuse for the insurer's withholding of policy benefits when there is no dispute as to liability or damages. The trial court therefore erred in granting the motion for judgment on the pleadings, and the Court of Appeal properly reversed the trial court's ruling.

I would affirm the judgment of the Court of Appeal.

Mosk, J., concurred.